**TRIPLETT v. BEELER et al.**

No. 43755.

Supreme Court of Missouri.

Division No. 2.

April 12, 1954.

Motion for Rehearing or to Transfer to
Court en Banc Denied June 14, 1954.

Jayne & Jayne, Kirksville, James Glenn, Macon, for appellants.

L. F. Cottey, Lancaster, Edwards, Hess & Collins, Macon, for respondent.

WESTHUES, Commissioner.

Plaintiff Triplett obtained a verdict and judgment in the sum of $30,000 against the defendants, Paul Beeler, P. O. Fenton, and Floyd Roberts, as damages for personal injuries alleged to have been sustained through the negligent operation of a car driven by Roberts as agent for the other defendants. A new trial was denied and the defendants appealed.

The principal question for decision on this appeal is whether plaintiff was entitled to submit his case to a jury under the res ipsa loquitur doctrine.

The facts as shown by the evidence were as follows: The defendants Paul Beeler and P. O. Fenton were the owners as partners of the Beeler Motor Company, located at Lancaster, Missouri. In their business, they bought and sold new and secondhand cars. Now and then secondhand cars were taken to other cities to be offered for sale. When it was necessary to transport these cars to other cities, the defendants usually asked for volunteers to drive such cars to the points desired. On June 8, 1952, plaintiff and James Boulton, Tommie Slavin, and Dean Gibson, drove four cars belonging to the defendants to a sales lot at Kansas City, Missouri. The defendants arranged to have the defendant Roberts at Kansas City with a car for the purpose of taking the four drivers back to Lancaster. Roberts met them at Kansas City about 4 o'clock in the afternoon. The five, with Roberts driving a 1952 model "98" Oldsmobile, began the return trip to Lancaster. At Macon, Missouri, they stopped to eat; then they proceeded north on U. S. Highway 63 toward Lancaster. At about 8 o'clock, they were going north about 3 or 4 miles north of Macon. It had been raining a little after the stop at Macon but at this time a heavy shower began to fall. As the car was in a curve, it began to skid so that the rear of the car skidded around and off the paved portion of the roadway into a ditch on the west side (their left) of the road where it turned over. Plaintiff, who was riding in the front seat with Roberts, was severely injured.

The occupants of the car testified that from Kansas City to Macon Roberts drove at a high rate of speed, at times at 100 to 110 miles per hour. Roberts testified he drove at about 75 to 85 miles per hour and only on one occasion for a short distance did he drive as much as 110 miles per hour and that was done when "the boys" asked to see how fast the car would go. All the witnesses testified that after they left Macon the speed of the car was much less than it had been before. Plaintiff and the other three passengers testified the speed of

the car immediately before the skidding was about 70 to 85 miles per hour. The defendant Roberts testified that going north from Macon he drove at about 60 to 65 miles per hour; that shortly before they reached the curve in the road, it began to rain harder and that the windshield wipers were turned on and were working. His explanation as to why the car skidded was that there was mud on the pavement. Note his evidence:

"Q. Tell this jury why you didn't see the mud you say was on the highway? Where were you looking? A. I was looking at the road.

"Q. Why didn't you see the mud and dirt you say was on there? A. I don't think it was heavy enough you could have seen it.

"Q. It wasn't heavy enough to see? A. I don't think so.

"Q. Are you telling this jury there was mud on there? A. There was mud on there.

"Q. How do you know? A. I know there had to be or it wouldn't have slipped like it done.

"Q. You are assuming because you slipped then you say there was mud on there? A. I do.

\*　\*　\*　\*　\*　\*

"Q. Can you explain to this jury how that thing happened out there that day? A. Well, I believe I could.

"Q. Well, let's hear it. A. Well, I hit this, when the car, which I thought was mud, started to skid around or slid and got sideways, never could get straightened up, and just went into this ditch on the left side of the road, turned over once and a half."

Witness Boulton was asked if he noticed the driver Roberts do anything just before the car went out of control. His evidence on that point was as follows:

"Q. I mean just before the car went out of control, did he do anything or did you notice him make any movements in the car? A. Yes, he was leaned over to the right, reaching over towards the radio or glove compartment or something, and steering with one hand, with the left hand.

"Q. And at that point, what, if anything happened? A. Well, we started to head off of the road just a little bit and he was looking down, then he looked up just then and just turned a little bit you know to keep it from going off the road, then it started to slide.

"Q. Had you reached a point where there was a curve to the left in the highway at the time Mr. Roberts did these things you have just detailed? A. That's right.

"Q. And you say the car started off the road a little bit, and Mr. Roberts looked up and apparently noticed it? A. Yes, it didn't get completely off of the road, but it started.

"Q. When you say 'off of the road' you mean the pavement? A. Off the pavement."

This same witness testified that, after the accident, defendant Roberts stated, "Boys, she just got away from me."

Roberts testified that he did not reach over toward his right to the radio or the glove compartment but that he had both hands on the steering wheel as he approached the curve and at the time the skidding began. He stated that he was familiar with the road and knew of the curve, having traveled that highway numerous times.

Plaintiff in his petition charged general negligence in the following manner: "That on June 8, 1952, plaintiff was riding as a passenger and guest in said 1952 Oldsmobile automobile which was being driven by Floyd Roberts along a public highway with a concrete slab, being U. S. Highway No. 63, and at said time and place said Floyd Roberts negligently caused and permitted said automobile to leave said slab then and

there free from travel and unobstructed and to turn over, whereby plaintiff was thereby directly and proximately injured * * *." The case was submitted to a jury by an instruction telling the jury that "and if you further find that at said time and at the place where the accident occurred said automobile was being deiven (driven) by defendant Roberts along U. S. Highway 63, if you so find, and that at said time and place said highway was unobstructed, if you so find, and that said automobile left the concrete part of the highway, if you so find, and turned over, if you so find, then you are instructed that such facts (if you believe them to be true) are sufficient circumstantial evidence to warrant a finding by you that the defendant Roberts was negligent, and you may so find, unless you find and believe from other facts and circumstances in evidence that the occurrence was not due to the defendant Roberts' negligence, * * *."

■ Defendants in their brief say that plaintiff by his evidence conclusively showed that the cause of the accident was the skidding of the car; that there was no evidence that the skidding was due to the negligence of Roberts; therefore, negligence cannot be presumed. Cases cited by the defendants hold that negligence cannot be inferred solely from the fact that a motor car skidded. In Polokoff v. Sanell, Mo.App., 52 S.W.2d 443, loc. cit. 446, the court said: "Hence, plaintiff proved not only the casualty and her injury resulting therefrom, but established beyond peradventure that the skidding of the car was the efficient, immediate, and proximate cause of the casualty. There was no showing of any act of omission or commission on the part of defendant that could justify the inference of any fault on his part that caused the car to skid."

That rule is supported by good authority and we have no fault to find therewith. See Girratono v. Kansas City Public Service Company, 363 Mo. 359, 251 S.W.2d 59, loc. cit. 63(2). However, as demonstrated in the case of Lindsey v. Williams, Mo., 260 S.W.2d 472, where there is evidence from which an inference may be drawn that the skidding was due to some negligent operation of the car, the question of negligence must be submitted to a jury. See also Story v. People's Motorbus Co. of St. Louis, 327 Mo. 719, 37 S.W.2d 898, loc. cit. 900 (6, 7); Dodson v. Maddox, 359 Mo. 742, 223 S.W.2d 434, loc. cit. 436(1); Quadlander v. Kansas City Public Service Company, 240 Mo.App. 1134, 224 S.W.2d 396, loc. cit. 398, 399(1); Tabler v. Perry, 337 Mo. 154, 85 S.W.2d 471.

■ We find sufficient evidence in this record to justify a jury in finding that the skidding of the car was due to some negligence of the driver Roberts. It could be said that the speed of 60 to 65 miles per hour at 8 o'clock at night while it was raining caused the driver to lose control of the car. It could also have been due to the fact that the driver while driving at that speed reached over to the radio or glove compartment and was not watching the road. Defendant Roberts admitted he knew of the curve in the highway and stated that the speed of 60 to 65 miles per hour was not excessive because the curve was long. He testified that mud on the highway caused the skidding. When asked why he did not see the mud, his answer was "Well, it wasn't thick enough to be seen at the speed I was going, maybe." We hold that a jury was justified in finding that the skidding was due to the negligence of the driver Roberts.

■■ Defendants also say that the trial court erred in submitting the case to a jury on general negligence, that is, the res ipsa loquitur doctrine. The theory of defendants is that if plaintiff proved any negligence it was excessive speed, but that speed was not shown to be the proximate cause of the accident; that the cause of the accident was the skidding of the car and no negligence could be presumed from such fact. As pointed out above, a jury may well have found that speed alone may not have caused the skidding; that the speed combined with inattention may have been the cause. We rule the trial court was justified in submitting the case in the man-

ner it was submitted. See the cases of Tabler v. Perry, supra, 85 S.W.2d loc. cit. 476, 477(10); Lindsey v. Williams, supra, 260 S.W.2d loc. cit. 474, 475(1); Dodson v. Maddox, supra, 223 S.W.2d loc. cit. 438 (5, 6). Again, note what the court said in Quadlander v. Kansas City Public Service Company, supra, 224 S.W.2d loc. cit. 399 (2, 3): "It is to be borne in mind that even though plaintiff's evidence 'tends to show' the specific cause of the accident, the benefit of the res ipsa loquitur doctrine will not be lost if by this evidence the precise cause 'is still left and remains in doubt or is not clearly shown'. Hill v. St. Louis Public Service Co., supra [Mo.Sup., 221 S.W.2d 130]; Belding v. St. Louis Public Service Co., Mo.Sup., en Banc, 215 S.W.2d 506, 510." The case before us comes within the rule just quoted.

■ Defendants also argue that the trial court should have directed a verdict for them because the evidence conclusively disclosed that plaintiff was guilty of contributory negligence in that he did not make any protest to the driver Roberts as to the speed he was driving. We cannot say that plaintiff was guilty of contributory negligence as a matter of law. Contributory negligence, to be a defense, must be negligence contributing to plaintiff's injuries. The driver of the car maintained that he was not driving at a negligent speed. In the brief, the defendants say plaintiff's evidence showed that excessive speed, if any, was not the proximate cause of the accident. If not, how could plaintiff have been guilty of contributory negligence as a matter of law? In this connection, we may also dispose of the assignment of error that the court erred in not giving defendants' instruction on contributory negligence. While defendants were entitled to an instruction on contributory negligence, the one they requested did not require the jury to find that the negligence, if any, of plaintiff contributed to his injuries. It directed a verdict for defendants if plaintiff was guilty of any negligence. That was not sufficient. An instruction directing a verdict must require a finding that the negligence was a contributing cause of the injury. Plaintiff's principal instruction directing a verdict for plaintiff upon the finding of certain facts included a requirement that plaintiff "was then and there exercising reasonable care for his own safety." Even so, had the defendants offered a proper instruction on contributory negligence, it should have been given. The one offered was not such an instruction and the trial court did not err in rejecting it.

■ Defendants say that jurisdiction of their case "was exclusively within the Workmen's Compensation Commission of Missouri" citing "RSMo 1949, Chap. 287 [V.A.M.S.]." There was no evidence in this case that plaintiff was an employee of the defendants. In fact, the evidence showed the contrary to be true. Therefore, the Compensation Act is not applicable.

It is also claimed that the verdict of $30,000 is grossly excessive. Plaintiff was 40 years old, healthy and strong. He had earned a livelihood for himself and family by trucking which required manual labor. He hauled grain, coal, hay, and other like products. He lived on a small farm of 16 acres. Injuries which plaintiff received in this accident were described by Dr. H. E. Erni as follows:

"A. He had a fracture with a forward displacement of the sixth and seventh cervical vertebrae, the fracture being through the pedicle or the right articular facet of the seventh. He also had a definite nerve filament injury to the seventh nerve—cervical nerve.

"Q. Is that the nerve, or are those the nerves that go to the right arm? A. They are.

"Q. In your opinion was that nerve injury the result of the fracture and the dislocation? A. It was.

"Q. And in your opinion is that nerve injury permanent or not? A. In my opinion it is.

"Q. In your opinion will he sustain any other permanent injuries? A. There will be a limitation of motion of his neck, which will determine—there will be about fifteen or twenty per cent. loss of motion to the right, and bring-

ing his head up will be about ten per cent. loss of motion, and twisting his head to the right will be about fifteen per cent. loss of motion.

"Q. And will that be permanent? A. In my opinion it probably will be.

"Q. What, if anything, are the consequences of this nerve injury? A. He has about a fifty per cent. loss of muscle power in his right hand and has a numbness of the second and third and fourth fingers. It is a paresthesia, which is an altered sensation and not a complete numbness."

During his stay in a hospital, plaintiff's treatment consisted of the application of an 8-pound traction for four days and then a plaster cast. Drugs were administered to relieve pain. After the cast was removed, plaintiff wore a heavy collar until September 6; at night a rubber collar was worn. Plaintiff was unable to perform any labor or drive his truck. The doctor testified that in about six months or a year from the time of the trial plaintiff would be able to drive a truck, but the plaintiff's loss of strength in his right arm would be permanent; also, that the stiffness in his neck was permanent and that calcium had formed in the vertebrae since the injury. Plaintiff was not without pain from the day of injury to the day of trial, causing loss of sleep, strength, and weight. Plaintiff had earned about $2,400 per year in his trucking business. He will be unable to engage again in hard labor to the extent he had previous to his injuries. His medical and hospital bills up to the time of trial were about $450. The evidence showed beyond a doubt that plaintiff's earning capacity has been materially impaired; also that he will continue to suffer pain causing discomfort and loss of sleep. A doctor who examined plaintiff at defendants' request testified plaintiff had a limitation of motion in the neck of "approximately forty per cent. limitation of motion in turning to the right, and approximately sixty per cent. limitation of motion in turning to the left." and "At the time of the examination in November, I found that he had fifty per cent. loss of muscle power in his right arm."

In passing on the question of the excessiveness or inadequacy of a verdict by an appellate court, a number of basic rules must be kept in mind. The first and foremost is that primarily it is the province of a jury to fix the amount of damages; that an appellate court should not disturb a verdict unless it is clearly evident that the amount fixed by the jury is either grossly excessive or inadequate. Even a trial judge, who has the right to consider all the evidence and has the opportunity to observe the situation, must have some sound basis for disturbing a jury's finding. See Lindsey v. Williams, supra, 260 S.W.2d loc. cit. 478(3, 4), and cases there cited. The nature of the injury as to its effect on the ability of the person injured to earn a livelihood must be considered. For example, the loss of a finger or two may not materially affect a lawyer's capacity to work but to a professional pianist's ability to follow her profession, it may be fatal.

In the case before us, plaintiff, an uneducated man earning his living by manual labor, has been seriously handicapped. Considering that in connection with the permanent limitation of movement of his head, the impairment of his right arm, the pain and discomfort past and future, the loss of earnings, we cannot say that the verdict should be disturbed. Considering the value of today's dollar, the verdict is not out of line with cases heretofore considered. See Lesch v. Terminal R. R. Ass'n of St. Louis, Mo., 258 S.W.2d 686, loc. cit. 692, 693(14) (15); Schonlau v. Terminal R. Ass'n, 357 Mo. 1108, 212 S.W.2d 420, loc. cit. 425(12); Francis v. Terminal R. Ass'n of St. Louis, 354 Mo. 1232, 193 S.W.2d 909, loc. cit. 913, 914(11).

The judgment is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court.

All concur.