No. 44,988

Dorothy Hugo, *Appellant*, v. Robert Manning, *Appellee*.

(441 P. 2d 145)

Opinion filed May 27, 1968.

*John E. Shamberg*, of Kansas City, argued the cause, and *Charles S. Schnider*, *Jacob F. May, Jr., Edward G. Collister, Jr., Gerald T. Elliott, Joseph Cohen* and *Frederick K. Cross*, all of Kansas City, were with him on the briefs for the appellant.

*George A. Lowe*, of Olathe, and *Joseph B. Bott*, of Kansas City, Missouri, argued the cause and were on the briefs for the appellee.

The opinion of the court was delivered by

HATCHER, C.: This controversy is the result of a personal injury received in a stampede from a fire in a crowded building.

The defendant, Robert Manning, was the court appointed receiver of an amusement park in Provence Village, including buildings, numerous rides and other amusement equipment. He managed and maintained the properties and had full control thereof. The defendant obtained permission to sell the amusement equipment and other personal property at public sale. The building chosen for the sale was approximately 24 feet wide and 100 feet long. There were two doors on the east side at the north and south end. The doors were 2 feet 4 inches wide. There was a double door on the west side of the building which was nailed shut.

At the time the amusement equipment and other personal property was brought into the building for auction, there were already various other items and materials in the room, which were not for sale, including boat building equipment, some boats, molds, jigs mounted on wooden frames with wheels on them, a number of containers and a heavy paper sack or burlap bag with something in it or under it.

The boat building equipment, boat materials and containers were present in the room when defendant first entered two years before and remained in the building until the time of the sale in approximately the same position they were in the first time defendant saw them. He didn't know what was in the containers and he made no effort to find out. The amusement equipment and other personal property which appellee assembled in the building for the sale occupied about two-thirds of the room from the front toward the back and the boats and other materials and containers went the rest of the way to the north end.

The placing of the contents of the building was described by a witness:

". . . Equipment to be sold and the rest of the contents were piled or stacked in a state of disarray. Equipment was piled all over each side and in the middle, and jumbled up. During the sale there was no space for moving around. People had to climb on top of things to get to where the auctioneer was. One had to turn sideways to walk through the room. People climbed from one machine to another. The aisles were inadequate."

Those in attendance at the sale, some 100 to 200 in number, were

permitted to go to the north end and browse around, look at things and pick them up. People were "all over the place before the sale." There was a path from the south to the north end of the room.

The auctioneer started selling at the south end of the room and was moving toward the north along the west side. He had been selling about a half to three-quarters of an hour when a noise was heard coming from the north end of the room by those attending the auction. It was varyingly reported as sounding like a flat board falling against the floor, making a popping sound, a noise similar to that made by a match in a barrel of gasoline—a "whoom" sound; a sound like a "whoosh," and a noise like a firecracker going off. A gray smoke rose to the ceiling, turned black and flames broke out.

The stampede after the fire commenced was described by a witness as follows:

"Hell, they started jumping on one another's back and, of course, most of the people went in the front at this time, see. Which is the south edge. Boy, I mean, they really panicked. I never seen anything like that. I have been in fires; but never like that, the way they panicked so bad. I actually saw one guy that went out a window. I mean, the window was boarded. Had a couple of two by fours, you know. And he went clear out the window. I mean, and the rest of them, they were just pushing and shoving and hollering at one another, like, you, know, walking in a chicken coop as the wolf—I mean, they just—boy, they were really getting wild. I started to go to the front (southeast) but there were a number of people trying to get out the front door. One man jumped out a window."

Plaintiff attended the sale with her husband, daughter and son-in-law. After a candy floss machine was auctioned off, she and her husband started to leave the building when suddenly she heard screaming and noise in the back of the room. She turned to see what it was and saw smoke and then flames. Then everybody started shoving and pushing. When she got to the door, somebody gave her a shove and she landed on the ground outside the southeast door. She was lying on her back and couldn't get up because her right arm was hurting so badly. Her husband got out the door and stood on the edge of the slab where she was lying, holding out his hands so people would stop stepping on her.

The plaintiff filed an action against the defendant in which she alleged negligence causing the injury in (1) failing to furnish plaintiff a safe place in which to accept his invitation as a business invitee, (2) inviting and permitting an unduly large crowd to gather in the building with inflammable substances in close proximity to the crowd, (3) inviting a large crowd into the building without

adequate doors or outlets and (4) maintaining in the building quantities of highly inflammable and dangerous substances, their exact nature not being known, but was known to defendant or should have been known to him that a large crowd was liable to cause it to ignite. These were allegations of specific negligence.

The petition then pled res ipsa loquitur in a separate paragraph as follows:

"That said explosion and fire were due to one or more acts of negligence on the part of the defendant, the exact nature of which act or acts are not known to the plaintiff for the reason that the materials, substances, ingredients, instrumentalities and equipment situated in said aforementioned building, as well as the building itself, were at all times herein mentioned under the exclusive and sole supervision and control and management of the defendant, but that said explosion and fire would not have occurred if the defendant had employed proper care in the storing, handling, inspection, supervision and control of said substances, materials, ingredients, instrumentalities and equipment, the supervision, management, control and handling of which were his responsibility. That said negligence on the part of the defendant was the direct and proximate cause of the injuries sustained by plaintiff."

The answer consisted largely of a general denial.

The case was tried to a jury which returned a verdict for the defendant. A motion for a new trial was overruled and plaintiff has appealed.

The appellant first contends that the trial court committed error in refusing to permit her to submit her case both on the theory of res ipsa loquitur and specific acts of negligence insofar as she relied on negligent cause of the fire as one of the proximate causes of her injuries.

The matter arose at the close of appellant's evidence. Following the overruling of a motion for a directed verdict the appellee suggested striking the cause based on res ipsa loquitur. Although there was some discussion about election, it is clear that the court's refusal to permit appellant to base recovery on res ipsa loquitur was for the reason her proof went too far in explaining the cause or causes of the injury. The court stated:

". . . And actually, I think the basis for the Court's ruling is that I feel in view of what was said in the Voss case that you have proceeded so far in attempting to show specific acts of negligence that you are now foreclosed from attempting to inject or rely on the doctrine of res ipsa."

The appellant sums up her contention as follows:

". . . where the defendant denies negligence and offers evidence to rebut specific acts of negligence, the plaintiff should not be forced to substitute his

conclusion as to the effect of his evidence for that of the jury. Nor, should the Court substitute its conclusion as to the facts proved. In any case where res ipsa is otherwise available, unless the defendant is negligent as a matter of law, the doctrine should be available to the plaintiff together with the evidence of specific acts of negligence. . . ."

Before we present the specific facts on this particular issue it might be helpful if we discuss the law applicable. The determination of this appeal does not require that we make an extended review of the doctrine of res ipsa loquitur as the subject has been extensively treated in most of the decisions touching on the doctrine. (*Pierce v. Schroeder,* 171 Kan. 259, 232 P. 2d 460; *Worden v. Union Gas System,* 182 Kan. 686, 324 P. 2d 501; *Rudy v. Whaley,* 188 Kan. 118, 360 P. 2d 863; *Robinson v. Nightingale,* 188 Kan. 377, 362 P. 2d 432.) These cases and the cases hereinafter cited are ample authority for the general statement that negligence is never presumed but must be established by proof but that where direct proof is lacking, circumstantial evidence may be used to prove negligence. One type of circumstantial evidence is that which courts have given the name of res ipsa loquitur. Whether the doctrine, which means simply "the thing speaks for itself," is to be applied depends on the character of the accident and the circumstances under which it occurred. When a thing which causes injury without fault of the injured person is shown to be under the management and control of the defendant or his servants, and the injury is such as in the ordinary course of things does not occur if the one having such management or control uses proper care, the circumstances furnish evidence from which the jury may find or infer negligence, which if not explained satisfactorily will support a verdict for the plaintiff.

Applicable to this very general rule of res ipsa loquitur is a more specific rule to the effect that where the plaintiff's evidence, after showing evidence as indicated in the preceding paragraph, goes further and shows an intervening cause or specific negligence, the rule of res ipsa loquitur may no longer apply. It is the universally accepted rule that there is no need or room for the operation of the res ipsa loquitur doctrine where the evidence in the case reveals all of the facts and circumstances of the occurrence and clearly establishes the precise cause of plaintiff's injury. One of the better examples of this rule is found in *Garvey v. Lamp Co.,* 113 Kan. 70, 213 Pac. 823, where this court stated at page 73:

"In his brief the plaintiff says nobody knows what occurred, but there was an explosion, and the doctrine of *res ipsa loquitur* should have been applied.

The plaintiff took *res ipsa loquitur* out of the case by his pleading and proof. He claimed to know the fire was set by an explosion of the lamp, and the explosion was caused by a defect in the lamp which was definitely described. This being true, he could not employ the doctrine of *res ipsa loquitur* to make a *prima facie* case. (*Byland v. Powder Co.,* 93 Kan. 288, 144 Pac. 251.)"

Neither party disputes the rule as announced above. In fact, both parties rely on *Voss v. Bridwell,* 188 Kan. 643, 364 P. 2d 955, where we stated at page 651 of the opinion:

"Thus, in the instant case if the plaintiff has properly alleged a cause of action in each of the alternative counts, he may attempt to prove specific acts of negligence on the part of the defendants and still rely on *res ipsa loquitur,* subject to the qualification that if his evidence goes so far as to *fully explain the cause or causes of his injury,* he loses the right to rely on *res ipsa loquitur,* . . ." (Emphasis supplied.)

The parties separate on the questions—what constitutes a full explanation of the cause of the injury; when is such determination to be made, and who is to make the determination?

Appellant is not without substantial authority for her contention that a claim should be submitted to the jury on the theory of res ipsa loquitur unless appellant's evidence establishes specific negligence as a matter of law. In 33 A. L. R. 2d 805, numerous cases are cited which—

". . . have apparently taken the view that, except in the clearest cases, both the specific evidence and the appropriate inferences from the happening of the accident should be permitted to go to the jury, which, if it rejects the specific proof, may still find against the defendant on the basis of the inference."

In *Sherman v. Hartman,* 137 C. A. 2d 589, 290 P. 2d 894, it is stated:

"Nor did the fact that plaintiff proved specific acts of negligence prevent the application of the doctrine. 'The more recent and better reasoned cases hold that proof of specific acts of negligence does not preclude the application of the doctrine except where the proof dispels the inference of negligence as a matter of law.' . . ." (p. 600.)

Appellant also relies heavily on *Banaghan v. Dewey,* 340 Mass. 73, 162 N. E. 2d 807, where the court said at page 79:

". . . here the jury were not required to accept the opinion evidence as to cause. As was said in *Cleary v. Cavanaugh,* 219 Mass. 281, 283: '(T)he plaintiff had a right to rely on the doctrine of res ipsa loquitur if the jury thought that he was unsuccessful in making out the case of specific negligence which he undertook to make out. . . .'"

The appellee contends that the appellant made a case submissible to the jury on the specific cause of the fire, and therefore, the rule announced in 33 A. L. R. 2d 803 applies where it is said:

"In several cases recognizing the general rule that an unsuccessful attempt by the plaintiff to prove specific acts of negligence does not deprive him of the benefits of res ipsa otherwise available, the view has been taken that where the plaintiff's evidence of specific negligence is sufficient to raise an issue for the jury or to make a prima facie case, the plaintiff's 'attempt' to prove specific negligence can no longer be regarded as 'unsuccessful,' and the jury should not be permitted to consider any inference or presumption arising from res ipsa."

The above rule has cases to support it. It must also be conceded that numerous cases may be found from sister states supporting various theories as to the specific negligence a plaintiff may show and continue under the doctrine of res ipsa loquitur.

It would appear that we could reduce the contentions of the parties to rather a simple issue—is the doctrine of res ipsa loquitur removed from a case by a *prima facie* showing of specific negligence or must the showing establish specific negligence as a matter of law?

These specific questions have never been passed on in this state. We have never been called upon to go further than to announce the rule that proof of specific acts of negligence will not take res ipsa loquitur out of the case unless plaintiff's evidence goes so far as to fully explain the cause or causes of the injury. We find it difficult to come up with a rule which gives additional aid to the solution of the problem.

We do not hesitate to reject the rule, sponsored by appellee, that proof of specific facts sufficient to establish a *prima facie* case will remove the doctrine of res ipsa loquitur from the case. A mere *prima facie* showing established by favorable inferences and expert opinion evidence does not arise to the dignity of "fully explained" cause of the injury.

Our research discloses that the more recent cases appear to reject the *prima facie* showing rule. In *Triplett v. Beeler,* (Mo.) 268 S. W. 2d 814, a headnote reads:

"Even though plaintiff's evidence tends to show specific cause of accident, plaintiff will not be deprived of the benefit of res ipsa loquitur doctrine, if precise cause still remains in doubt or is not clearly shown."

In A. L. R. 2d Later Case Service, Volume 4, p. 115, will be found a supplement to 33 A. L. R. 2d 805 listing the recent cases.

Neither do we approve of the rule, sponsored by appellant, that res ipsa loquitur must remain in the case unless the proof dispels the inference of negligence or establishes negligence as a matter of law. Positive evidence which establishes that the plaintiff understands the cause of the injury should suffice.

However, there is no reason in law why a plaintiff may not offer such evidence as may be available tending to show specifically the items of negligence and still rely upon the inference also permitted under res ipsa loquitur. A number of different causes or inferences may be thus left to the final determination of the triers of the facts. It is true that appellant here introduced evidence of specific acts of negligence. However, this was not the equivalent of establishing such allegations as true. It cannot be properly said that these specific acts had been established until the jury returned its verdict. Prior to that time, for all appellant could know, her attempt to establish specific acts of negligence by inferences might be altogether unsuccessful. We think that in cases in which a plaintiff is entitled to rely on the doctrine of res ipsa loquitur, he should not be penalized by the loss of the presumption because he has been willing to go forward and do the best he can to prove specific acts of negligence. On the contrary he should be encouraged to give the court, the jury, and even the defendant the benefit of whatever facts, if any, his effort may develop toward revealing the specific causes of the mishap.

Highly summarized appellant presented the following facts reflecting on the cause of the explosion and fire:

A representative of the National Board of Fire Underwriters inspected the premises following the fire and made a report of his investigation. He reported that a liquid type peroxide was used in the boat construction as well as several other highly inflammable chemicals. The former employees, who engaged in the building of plastic boats on the premises some two to four years previously mixed resin with peroxide.

The professor of Chemical Engineering at the University of Kansas, whose specialty involves the analysis of industrial chemicals, and who is familiar with the process of making fiberglas boats, testified that the usual curing agent in this construction is organic peroxide which is used for the purpose of setting the resin which is used. He cannot think of any catalytic agent that can be substituted for peroxide. He testified that any of the peroxides used in making plastic boats would be subject to ignition or explosion from shock, thermoshock or even friction and the fact that the substance is spilled does not destroy its volatility or combustible qualities even

if it dries. In the doctor's opinion, the type of flame and smoke described by the witnesses to the incident in question was caused by the burning of peroxide and it could have been caused by the igniting of released peroxide which collected in an open surface where the footstool mentioned by one of the witnesses struck when it was dropped. He further testified that, in his opinion, when the footstool was dropped some organic peroxide coming in contact with some organic material was ignited by friction causing the fire.

The appellant's evidence at its best did no more than establish a *prima facie* case by favorable inferences and expert testimony. The cause of the fire or explosion was not fully explained but all favorable inferences to be drawn from the evidence and the weight to be given the testimony of the experts were questions for the fact finding body, even in the absence of contradicting testimony. The circumstances were not so completely established by positive evidence that no inference of appellee's negligence need be made, and if the doctrine applies the appellant is not to be penalized by an honest, but perhaps unsuccessful, effort to put in evidence whatever inadequate information she has concerning the happening.

We must conclude that the case should have gone to the jury on both the proof of specific negligence causing the fire and on the theory of res ipsa loquitur with proper instructions.

We might also suggest in passing that whether or not res ipsa loquitur should be taken from the case because of proof of specific negligence need not and should not be determined until the conclusion of all the evidence, unless the plaintiff's proof absolves the defendant of negligence as a matter of law requiring a directed verdict at the close of plaintiff's evidence.

The result reached renders unnecessary a discussion of the other errors urged by appellant. We do, however, note appellant's objection to misconduct of counsel based on repeated attempts to inject facts into the case, in his opening statement, over appellant's repeated objections and the ruling of the trial court. We must express our disapproval of the conduct of Mr. Bott, trial counsel for appellee. Orderly procedure requires that the trial court's rulings be observed by counsel. If counsel feels that a ruling is incorrect, his remedy is by appeal, not by an attempt to avoid the ruling.

The judgment is reversed with instructions to grant a new trial

on all of the issues raised by the pleadings and settled at a new pretrial conference.

APPROVED BY THE COURT.

PRICE, C. J., concurs in the result.
O'CONNOR, J., not participating.