No. 45,934

Newton Ballhorst, *Appellee*, v. Hahner-Foreman-Cale, Inc., *Appellant*.

(484 P. 2d 38)

Opinion filed April 10, 1971.

*Warren H. Kopke*, of Great Bend, argued the cause, and *Kenneth L. Kerns*, of Great Bend, was with him on the brief for the appellant.

*Terry G. Paup*, of Topeka, argued the cause; Turner and Balloun, Chartered, of Great Bend, was on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: Defendant-appellant, Hahner-Forman-Cale, Inc., appeals from a judgment recovered by plaintiff, Newton Ballhorst, for personal injuries caused by the collapse of a haydite block wall being constructed by defendant. Plaintiff had been awarded workmen's compensation. He brought this action for his benefit and for that of his employer, Whitesell Lumber Company, and its workmen's compensation carrier, Employees Mutual Insurance Company, as their interests appear under the assignment provisions of K. S. A. 1970 Supp. 44-504.

In his petition plaintiff alleged that the wall collapsed due to the negligence of defendant in not properly constructing and bracing it. In its answer, defendant denied the allegations of plaintiff and affirmatively set forth defenses of contributory negligence, estoppel, assumption of risk, act of God and that plaintiff was not the real party in interest.

Following the filing of interrogatories answered by plaintiff, a pretrial conference was had in which the issues were defined. The case proceeded to trial to a jury which returned a verdict for plaintiff in the amount of $30,000.00.

Defendant's posttrial motions were overruled and this appeal followed.

Defendant is a construction company and was engaged in constructing an extension to a building owed by Whitesell Lumber Company in Great Bend. On December 1, 1965, the construction was incomplete but the wall in question had been erected for approximately three weeks. It was necessary to brace the wall during contruction because gusty winds prevailing in the area could blow down this type of wall. On the morning in question some of the bracing had been removed to facilitate the installation of the floor by defendant's workmen. There was a high wind with gusts up to forty miles per hour.

Plaintiff was working for his employer Whitesell near the wall when it blew down and buried him. Plaintiff was knocked unconscious and was taken to the hospital. He suffered injuries, particularly to his back, which aggravated a preexisting condition. It was established that plaintiff has a functional impairment of forty to fifty percent, which could be improved only by surgical intervention. There was testimony that the surgery would cost in

excess of $1,500.00 and would cause plaintiff to be off work from six months to a year.

On appeal defendant specifies numerous points of error, which will be considered in the order presented.

Defendant first claims the trial court abused its discretion in permitting plaintiff to amend the prayer of his amended petition to the sum of $129,535.00 from the previous amount of $59,960.32. Plaintiff's motion to amend was presented at the close of all the evidence and immediately before the jury was instructed. There is no contention the jury was aware of the amendment.

The record discloses that when the motion to amend was presented there was a discussion between the court and counsel for both parties. Defendant's counsel was concerned that the increase in plaintiff's prayer would exceed the limits of his client's insurance coverage. At this point plaintiff's counsel stipulated that if the judgment was in excess of $59,000.00, and was not within the policy limits of defendant's insurance, the plaintiff would not enforce that part of the judgment in excess. The trial court then allowed the amendment, and after a short recess the trial proceeded.

Defendant contends that even though the jury did not know about the amendment, the increased prayer and the instructions relative thereto tended to increase the amount of the verdict to the prejudice of defendant.

Plaintiff says his medical testimony pertaining to permanent' disability justified the increased prayer.

Plaintiff further states that since the verdict was well within the amount of the original prayer there is no affirmative showing that the prayer had anything to do with the amount of the verdict. Plaintiff points out that the jury was instructed to grant damages strictly in accordance with the evidence and that there is no affirmative showing that the jury did otherwise. Plaintiff also argues that since the verdict was only half the amount of the original prayer, no prejudice could have possibly resulted to defendant.

When the matter was again presented on defendant's motion for a new trial, the court found that the evidence supported the amendment, that the amendment had never been mentioned to the jury and that defendant had not been prejudiced.

While we do not approve the allowance of such an amendment to the prayer, under the circumstances shown to exist, as being the

best practice, nevertheless, we cannot say the trial court's action amounted to reversible error. A trial court was given broad discretionary powers as to the amendment of pleadings under G. S. 1949, 60-759. The powers were retained under the provisions of K. S. A. 60-215 [now 1970 Supp.]. See Gard, Code of Civil Procedure Annotated, § 60-215 "Advisory Committee Notes," p. 79.

The identical question was presented on appeal in *Collins v. City Cab Co.*, 192 Kan. 394, 388 P. 2d 597, wherein plaintiff was allowed to increase the prayer before submission of the case to the jury. The jury's verdict exceeded the amount of the original prayer, and defendant claimed abuse of discretion amounting to prejudicial error. We held:

"Under the provisions of G. S. 1949, 60-759, as construed by many decisions of this court, a trial court is given broad discretionary powers as to the amendment of pleadings, and its action with respect thereto will not constitute reversible error unless it affirmatively appears the amendment allowed or denied is so material that it affects the substantial rights of the adverse party and constitutes a clear abuse of judicial discretion." (Syl. ¶ 1.)

Defendant's next three specifications of error concern the admission into evidence of the deposition of Don Engel.

Mr. Engel was general superintendent for defendant and was working on the job site in that capacity on December 1, 1965, the date of plaintiff's injury. Mr. Engel's discovery deposition was taken on May 29, 1967. He died of a heart attack the next day and as a result was not afforded an opportunity to read the deposition or sign it. Counsel for defendant was present when Engel's deposition was taken by plaintiff's counsel.

Defendant first contends the deposition was inadmissible because a diagram of the wall and bracing prepared by Mr. Engel, when he was giving his deposition, was missing. Defendant contends that since the diagram was missing he was deprived of his right to require the introduction of all of the deposition pursuant to the provisions of K. S. A. 60-226 (*d*) (4) which reads:

"If only part of a deposition is offered in evidence by a party an adverse party may require him to introduce all of it which is relevant to the part introduced, and any party may introduce any other parts."

Defendant claims prejudice because Engel referred to the diagram in his testimony, describing the construction of the wall and the bracing in support thereof. Specifically, defendant claims that references by Engel to Brace No. 1 were meaningless without the

diagram to show the relative position of Brace No. 1 on the wall and the nature of its construction.

In his testimony Engel fully described the wall and bracing. The wall was a part of an extension to one of the lumber yard buildings. It was constructed of twelve inch haydite blocks and was approximately forty feet long and sixteen to seventeen feet high. It was braced by 2 x 4's which were bolted onto the wall and connected to blocks bolted into the floor. He further testified that the wind was gusty during the morning in question, and he decided that a higher brace should be added at the west end of the wall. With reference to Brace No. 1, Engel testified it had been removed to facilitate laying a slab (floor) in the area; that he could have worked around the brace rather than remove it, but such a course would have slowed down the work. Engel further testified:

"Q. Okay. Now, the reason Brace No. 1 was taken down is that you felt by the time a gusty wind would come up that it would give you time to properly brace it again?

"A. Yes, we would put it back up again.

"Q. Okay; what happened here is that you didn't get it up soon enough?

"A. This is right.

"Q. And you could have gotten it up soon enough but it just was one of those things that wasn't done?

"A. That is right."

On cross-examination, Engel indicated that since the wall was "completely taken over" by the wind, whether the No. 1 brace had been replaced or not would have made no difference.

The significance of the No. 1 brace as evidence was the fact that it had been removed and had not been replaced when the wall fell. We believe Engel's testimony was sufficiently clear without the diagram.

There was other testimony by Chester B. Cale, president of defendant, and by the plaintiff to the effect that the wall was insufficiently braced to withstand gusty winds. In other words, there was ample evidence, other than the testimony of Engel, to establish that the wall was insufficiently braced under the wind conditions shown to exist. Under the circumstances admission of Engel's deposition, despite the missing diagram, cannot be said to amount to prejudicial error.

Defendant further claims error in that the deposition contained leading and suggestive questions, which were specifically objected to by defendant's counsel. Prior to reading the deposition to the

jury, the trial court carefully considered the questions objected to by defendant and heard the arguments of counsel in connection therewith. A number of objections were sustained. The review of the deposition, objections and arguments of counsel, and rulings of the court consume sixteen pages of the record on appeal. Much of the testimony of Engel was considered on a line by line basis by the trial court and counsel. We have examined the court's rulings with reference to the objections lodged, and we find no abuse of discretion that rises to the level of reversible error.

When the deposition was introduced at the trial, defendant made a general objection on the ground that plaintiff should not have been permitted to interrogate Engel by the use of leading questions, since it was not established that Engel was an officer or managing agent of defendant within the contemplation of K. S. A. 60-243 (*b*), now 1970 Supp.

The trial court found that Engel's position was one of supervisory management and fell within the scope of managing agent.

This court has not been called upon to answer inquiry as to who is a managing agent, as the term is used in 60-243 (*b*). Subsection (*b*) of our statute is the same as subsection (*b*) of parallel Rule 43 of the Federal Rules of Civil Procedure, 28 U. S. C. A. (Gard, Kansas Code of Civil Procedure Annotated, § 60-243, "Advisory Committee Notes," p. 211). Federal courts generally have dealt with the subject on an ad hoc basis depending on the facts of each case. (1 A. L. R. Fed., Anno., p. 693.) In *Skogen v. Dow Chemical Company* (8th Cir. 1967), 375 F. 2d 692, the court stated that an individual is a managing agent of a corporation if:

". . . (1) His interests in the litigation are identified with his principal, and (2) He acts with superior authority and general autonomy, being invested with broad powers to exercise his discretion with regard to the subject matter of the litigation. . . ." (p. 701.)

In dealing with the phrase "managing agent" with respect to service of process on a foreign corporation under G. S. 1949, 60-2524 (K. S. A. 60-304 [*f*], now 1970 Supp.), this court in *Freeman v. Keltner*, 175 Kan. 37, 259 P. 2d 228, noted the difficulty in formulating a general rule as to what constitutes a managing agent and held that it was necessary to determine each case on its particular facts. (See, also, *Sage v. Oil Country Specialties Mfg. Co.*, 138 Kan. 501, 27 P. 2d 542; and *Betterment Co. v. Reeves*, 73 Kan. 107, 84 Pac. 560.) The reasoning expressed in *Freeman* is generally in line

with federal decisions dealing with Federal Rule 43 (*b*). Although *Freeman* dealt with the phrase as used in a different statute, we believe what was said therein may be appropriately applied to 60-243 (*b*), *supra.* In the instant case Engel described himself as general superintendent. His testimony indicated that he was clothed with full and exclusive authority concerning the construction and bracing of the wall in question. Chester B. Cale was president of defendant and the only other officer of defendant who was called as a witness. He testified that he had not even observed the building site until after the wall had blown down. His testimony was further indication that Engel had complete supervisory authority over the construction and bracing of the wall, which is the subject matter of this litigation. Under the facts of the instant case, we believe the trial court was fully justified in determining Engel to be a "managing agent" of defendant.

Finally defendant claims error in the admission of the deposition, because Engel died before he had an opportunity to read or sign it, since such steps were not waived by Engel or defendant.

The certificate of the shorthand reporter, who took the deposition, was found to be in order and the accuracy of his transcription was not challenged.

K. S. A. 60-226 (*d*) (3) provides *inter alia* that the deposition of a witness may be used for any purpose if the court finds that the witness is dead. K. S. A. 60-230 (*e*) (amended, now 1970 Supp.) provides in substance that a deposition unsigned for any of the reasons listed therein:

". . . may then be used as fully as though signed, unless on a motion to suppress under section 60-232 (*d*) the judge holds that the reasons given for the refusal to sign require rejection of the deposition in whole or in part."

We believe the import of the statutes mentioned gives a trial judge broad discretion in the admission of a deposition under conditions such as existing here. Moreover, the tenor of the statutes indicates the applicability of the rule that favors admissibility of evidence in doubtful cases. This was the view taken with respect to Federal Rule 30 (*e*) of the Federal Rules of Civil Procedure (28 U. S. C. A.) in *Paul v. American Surety Company of New York*, 18 F. R. D. 68, wherein a motion to suppress the deposition of a witness who died before signing it was denied. Federal Rule 30 (*e*) is the same as our 60-230 (*e*), *supra;* Gard, Kansas Code of Civil Procedure Annotated, § 60-230 (*e*), "Advisory Committee Notes," p. 155.

We find no prejudicial error in the admission of the Engel deposition on any of the grounds urged.

Defendant next complains the trial court erred in admitting into evidence reports of the United States Weather Bureau located at the Great Bend Airport, about three miles from the Whitesell Lumber Yard. Specifically, the report in question was entitled "Surface Weather Observations" and reflected on the hour readings of wind direction and velocities on December 1, 1965. The authenticity of the report was not questioned. The court instructed the jury concerning the location of the airport in relation to the lumber yard.

We find no error in the admission of the weather report. It appears to meet the requirements of an exception to the hearsay rule as an official record under the provisions of K. S. A. 60-460 (*o*) and also appears to qualify as a publication of occupational interest under 60-460 (*bb*). In his commentary, concerning the latter subsection, Judge Gard specifically mentions "weather reports" as one of the more common variety of reports, which would fall within the hearsay exception contemplated by the rule. (Gard, Kansas Code of Civil Procedure Annotated, § 60-460 [*bb*], "Author's Commentary," p. 498.)

Defendant contends the trial court erred in refusing to instruct the jury on assumption of risk when there was evidence showing that plaintiff was aware of the danger of the wall and did nothing to protect himself.

Plaintiff testified that he was aware some bracing had been removed the previous day and that he had so informed his employer Whitesell. On the day the wall fell down, however, plaintiff saw employees working at the east end of the wall and assumed they were putting up braces. Whether plaintiff thought the wall was dangerous at the time it fell is not clearly shown.

Be that as it may, we believe the trial court fully instructed on the issues framed by the pleadings and evidence adduced in this case. Instruction No. 1, which was objected to, reads as follows:

"The plaintiff, Newton Ballhorst, claims that he was injured and sustained damages as a result of the negligence of the defendant, Hahner-Foreman-Cale, Inc., in one or more of the following respects:

"A. Improper construction of the wall in question.

"B. Improper bracing of the wall in question.

"C. In failing to properly inspect and test the sufficiency of the wall.

"D. In failing to warn the plaintiff of the type of construction involved

when the defendant knew or should have known of the insufficiency of this type of construction to withstand gusty winds.

"E. Plaintiff further relies on the legal doctrine known as res ipsa loquitur, which simply means the thing speaks for itself in that occurrences such as involved in this case do not happen without a negligent act or acts.

"The plaintiff claims one or more of the foregoing as the direct cause of his injury and damage.

"The burden of proof is upon the plaintiff to prove that the defendant was negligent in one or more of the particulars alleged and that the defendant's negligence was a direct cause of injury to the plaintiff's person.

"The defendant admits that the wall in question was constructed by the defendant, Hahner-Foreman-Cale, Inc., and generally deny any negligence on the part of the defendant as set out in the plaintiff's claim above. More specifically: The defendant denies there was any negligence on its part which was the direct cause of the injuries claimed; and that the plaintiff was injured or damaged to the extent claimed.

"The defendant has asserted the following defenses:

"A. That the plaintiff was contributorily negligent, and that the plaintiff failed to keep a proper lookout for his own protection.

"B. That the plaintiff failed to take the necessary precaution for his own safety after he knew or should have known of the gusty wind conditions existing.

"The defendant has the burden of the alleged defense, contributory negligence as hereinbefore set out.

"If you find from all the evidence that the plaintiff has met the burden of proof on the issues concerning which the burden of proof rested upon him and that the defendant has failed to meet the burden of proof on any of the affirmative defenses, you should return a verdict in favor of the plaintiff.

"If on the other hand you find that the plaintiff has failed to meet the burden of proof on any of the issues concerning which the burden rested upon him or that the defendant has met the burden of proof on any of the affirmative defenses, then, you should return a verdict in favor of the defendant."

In Instructions Nos. 5 and 6 the court defined negligence and contributory negligence following PIK 3.01 and 4.01, respectively.

This case is a negligence action not against an employer, but against a third party. The specific charges of both parties of negligence on the part of the other are set out in the instructions. If plaintiff intentionally exposed himself to a known danger in a manner in which this jury found a reasonable man would not then the jury was clearly authorized to find such conduct to be negligence on the part of the plaintiff.

While the defenses of assumption of risk and contributory negligence have been said to be somewhat akin, this court has always recognized a distinction. In *Kleppe v. Prawl*, 181 Kan. 590, 313 P. 2d 227, 63 A. L. R. 2d 175, it was pointed out that assumption of risk

arises through implied contract of assuming the risk of a known danger, while contributory negligence arises out of a tort; the essence being carelessness. It also noted that the assertion of assumption of risk as a defense denied defendant's negligence, while contributory negligence admits defendant's negligence, but denies the proximate cause (citing 65 C. J. S., Negligence, § 117, p. 709, now 65A C. J. S., Negligence § 117, p. 29.) The distinctions noted in *Kleppe* have since been recognized in *Taylor v. Hostetler*, 186 Kan. 788, 352 P. 2d 1042; *Blackmore v. Auer*, 187 Kan. 434, 357 P. 2d 765; and *Shufelberger v. Worden*, 189 Kan. 379, 369 P. 2d 382. The latter case was a negligence action in which plaintiff sought to recover damages for personal injuries sustained in helping defendant move a piano. As in the instant case, the trial court instructed on negligence and contributory negligence, but refused to submit assumption of risk when requested by defendant. The issue was presented on appeal and we had this to say:

"Without further detailing the testimony we are of the opinion the record before us negates the presence of assumption of risk. In the instant case the defendant failed to show that there was any employer-employee relationship or any contractual relationship, express or implied; nor can it be found in the record that plaintiff received any benefit from the transaction, and in order for assumption of risk to be a defense one or more of the aforementioned conditions must exist. Defense counsel cite no authority where the defense of assumption of risk has been applied in a tort action such as the instant case, and in our limited research we have failed to discover any such authority." (p. 385.)

Applying the foregoing rules to the instant case, we find no error in the trial court's exclusion of an instruction on assumption of risk.

Defendant next claims the trial court erred in instructing the jury on *res ipsa loquitur*. Defendant makes two contentions in this regard. It first asserts that one of the essential elements necessary to establish a prima facie case of negligence under the doctrine of *res ipsa loquitur* is sole and exclusive control of defendant. The principle is correctly stated but it lends no aid to defendant in this case. There was evidence, as defendant points out, that Whitesell furnished most of the material and some labor, but the manner in which the wall was constructed and the amount and nature of the bracing was exclusively in the control of defendant and there is no evidence to the contrary.

Defendant further argues that despite our holding in *Hugo v. Manning*, 201 Kan. 391, 441 P. 2d 145, plaintiff cannot rely on *res ipsa loquitur*, where he also pleads specific negligence. In *Hugo*

we held that where *res ipsa loquitur* has been properly brought into a case it will not be removed by a mere prima facie showing of specific negligence, but under such circumstances the case should be submitted on both the theory of specific negligence and *res ipsa loquitur*. We further held that *res ipsa loquitur* should not be removed by proof of specific negligence unless the proof goes so far as to fully explain the cause of the injury by positive evidence revealing all of the facts and circumstances.

In the instant case plaintiff testified as narrated:

". . . that the only thing he could remember when the wall went over was that he heard an explosion, and that he was taken to Central Kansas Medical Center following this occurrence."

There was testimony that the wall was inadequately braced, that a brace had been removed and not replaced, and that defendant's employees were either replacing or constructing additional bracing at the east end of the wall, immediately before the collapse, but no witness for either plaintiff or defendant fully explained what happened when the wall collapsed. A number of different causes or inferences were thus left to the final determination of the jury. We think what was said in *Hugo* is applicable:

". . . A number of different causes or inferences may be thus left to the final determination of the triers of the facts. It is true that appellant here introduced evidence of specific acts of negligence. However, this was not the equivalent of establishing such allegations as true. It cannot be properly said that these specific acts had been established until the jury returned its verdict. Prior to that time, for all appellant could know, her attempt to establish specific acts or negligence by inferences might be altogether unsuccessful. We think that in cases in which a plaintiff is entitled to rely on the doctrine of res ipsa loquitur, he should not be penalized by the loss of the presumption because he has been willing to go forward and do the best he can to prove specific acts of negligence. On the contrary he should be encouraged to give the court, the jury, and even the defendant the benefit of whatever facts, if any, his effort may develop toward revealing the specific causes of the mishap." (p. 398.)

The defendant has assigned numerous additional specifications of error which were not briefed nor argued. Nevertheless, we have examined the further questions raised in the light of the record and the trial court's memorandum on defendant's motion for a new trial in which most of the questions were considered. We find nothing of sufficient merit to warrant a reversal of the judgment rendered.

The judgment is affirmed.