Kimball v. Edwards.

No. 18,531.

HELEN W. KIMBALL et al., *Appellants,* v. E. H. EDWARDS, *Appellee.*

SYLLABUS BY THE COURT.

JUDGMENT — *Supported by Competent Evidence — No Prejudicial Error in the Record.* The record in this case discloses competent evidence to support the judgment, which was rendered in a cause tried to the court; and since it does not appear that the admission of improper evidence affected the result, the judgment is affirmed. (*McCready v. Crane,* 74 Kan. 710, 88 Pac. 748.)

Appeal from Labette district court; ELMER C. CLARK, judge. Opinion filed January 10, 1914. Affirmed.

*A. A. Osgood,* and *Paul H. Kimball,* both of Parsons, for the appellants.

*W. D. Atkinson,* of Parsons, for the appellee.

The opinion of the court was delivered by

PORTER, J.: In this action plaintiffs sought to recover thirteen and one-half shares of the capital stock of the Parsons Water Supply and Power Company, alleging in their petition that the shares belonged to them but had been wrongfully transferred to the defendant. The answer made specific denials of some of the allegations and a general denial of the others. The cause was tried without a jury, and the court found that the shares in question belonged to the defendant but that he was indebted to the plaintiffs for the value thereof; and accordingly judgment was rendered in favor of the plaintiffs for the book value of the stock, $1250. The costs were adjudged against the plaintiffs for the reason that before the commencement of the action the defendant had offered to pay the value of the shares. From this judgment the plaintiffs have appealed.

Charles H. Kimball, a resident of Parsons, died intestate in 1907, leaving as his heirs his widow, Helen W., and five sons, four of whom, with their mother, are the plaintiffs. C. W. Kimball, the other son, was one of the administrators of his father's estate. The Kimball Investment Company was organized in 1907 for the purpose of holding and managing the property of the estate. At the time of his death Charles H. Kimball and E. H. Edwards were the owners of most of the stock of the Parsons Water Supply and Power Company; they practically owned the plant and had operated it since 1884. For a great many years they had been engaged in numerous business dealings in which the profits and losses were shared equally. Their real estate stood in the name of Edwards and Kimball as partners, and their friendly relations and confidence appear to have continued unbroken until the death of Charles H. Kimball. The evidence shows that there was an agreement between them that their interests in

the water company should be equal; that whenever one purchased outstanding stock he would divide it with the other, each paying an equal share of the cost. The arrangement was in force at the time of the death of Charles H. Kimball, although some certificates of stock which had been held by him for several years had not been divided. This controversy arose over a certificate for twenty shares of the stock issued in the name of A. Matthewson which was found in the private papers of Charles H. Kimball after his death. The evidence shows that he had voted the shares represented by this certificate at stockholders' meetings and had generally exercised rights of ownership over it; further that he had on several occasions stated that the certificate belonged to him but was to be divided with his partner. A. Matthewson is a relative of the Kimball family; he expressed surprise when informed by C. W. Kimball of the existence of the certificate, but said he would like to make a gift of it to the widow and heirs. For that purpose he assigned and delivered the certificate to C. W. Kimball, who, as stated, was one of the administrators. Some months thereafter the defendant, Edwards, explained to C. W. Kimball the arrangement between the former partners that each should share equally in the stock; and for the purpose of carrying out that agreement C. W. Kimball surrendered the Matthewson certificate and had five shares issued to the Kimball Investment Company and fifteen to Edwards. It seems there were other certificates of stock which were divided at the same time, and in the division fifteen of the Matthewson shares went to the defendant. At that time E. H. Edwards offered to pay the estate for his proportion of the Matthewson stock, but C. W. Kimball declined to accept any payment. Helen W. Kimball, the other administrator, was not informed about the matter nor were the other heirs consulted. When they learned of the transfer they demanded the return of thirteen and one-half of the fif-

teen shares, being the proportion they claimed belonged to them, leaving one and one-half shares as the property of C. W. Kimball. Upon the demand being refused, this suit was brought.

As we have seen, the court gave the plaintiffs judgment for the book value of the shares; and it is manifest that the controversy is not over the value of the shares but over the control of the corporation. The affirmance of the judgment leaves the control of the company divided equally between the two interests; the heirs of Charles H. Kimball holding 692 shares, and the defendant, E. H. Edwards, holding the same number.

The errors complained of are, the improper admission of evidence; that the judgment is contrary to law and not supported by the evidence; and error in overruling the motion for a new trial. The main contention is that under a general denial defendant was permitted to introduce evidence to prove estoppel and laches. Some evidence was admitted respecting an attempt to procure defendant's consent to a sale of the property and franchises of the company which had no bearing upon the issue; and some facts were shown indicating that the plaintiffs had permitted the Matthewson shares to be voted by the defendant at stockholders' meetings. It is contended that the only purpose of this testimony was to establish estoppel and laches, neither of which was pleaded as a defense. The judgment, however, is so abundantly sustained by competent evidence as not to require any aid from the principles of estoppel or of laches. We are unable to discover any ground of error that would warrant a reversal. The cause was tried to the court; there are no special findings; and there is abundant evidence to support the judgment. The presumption is that any incompetent evidence admitted was disregarded by the

court.    In *McCready v. Crane*, 74 Kan. 710, 88 Pac. 748, the first paragraph of the syllabus reads:

"A judgment rendered in a case heard without the intervention of a jury will not be reversed on account of the admission of incompetent evidence, unless the record discloses that there was no competent evidence to support it or in some other way shows affirmatively that the improper evidence affected the result." (And see authorities cited in the opinion at page 713.)

(See, also, *Sarbach v. Sarbach*, 86 Kan. 894, 122 Pac. 1052.)

There is a complaint of error in admitting evidence of statements made by Charles H. Kimball in his lifetime with respect to the Matthewson stock. It is said that the statements of his ownership and title were incompetent until proof of his ownership appeared. We think the evidence shows that A. Matthewson, through whom plaintiffs claim, never had any interest in this stock, and never knew of its existence until he was informed of it by C. W. Kimball; that on the contrary the overwhelming evidence shows that the certificate belonged to Charles H. Kimball, and was held by him impressed with the trust arrangement between him and the defendant that all purchases of stock by one should be divided and the cost thereof split. The admissions or declarations of ownership were competent because they explained his possession of the certificate. They were part of the *res gestæ*. (*Butts v. Butts*, 84 Kan. 475, 114 Pac. 1048.)

It follows from what has been said that the judgment must be affirmed.