No. 39,385

RUSSELL HILGENFELD, Executor of the Will of Fred Johnson, Deceased, *Appellee,* v. GEORGE LOWELL JOHNSON, *Appellant.*

(270 P. 2d 293)

Opinion filed May 8, 1954.

*Russ B. Anderson,* of McPherson, argued the cause, and *Archie T. Mac-Donald,* of McPherson, was with him on the briefs for the appellant.

*Evart Mills,* of McPherson, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This was an action by an executor to recover for property alleged to have been obtained from his deceased testator

by undue influence during the existence of a confidential relationship. Plaintiff recovered and defendant appeals.

At the outset it can be said that this is not a case where a detailed reference to the pleadings is essential to a proper understanding of the facts on which the rights of the parties depend or required to dispose of the appellate issues involved. Nevertheless, for present purposes, it should be stated plaintiff, as the duly appointed and acting executor under the last will and testament of Fred Johnson, deceased, commenced this action against the defendant, George Lowell Johnson, the decedent's son, by the filing of a petition which, under appropriate allegations, charged that a discovery, disclosure and accounting concerning numerous transactions had between them would disclose that defendant had acquired a large portion of his father's property, during the last few years preceding the latter's death, under conditions and circumstances warranting a return of that property to the estate or judgment for its value and prayed for relief accordingly.

Following the filing of the petition it was attacked by a motion to strike certain of its allegations and to make others more definite and certain. This motion was sustained in part and overruled in part. After the petition had been amended to comply with rulings of the trial court on the motion the defendant demurred thereto on the bases several causes of action were improperly joined and the facts pleaded were insufficient to constitute a cause of action. When this demurrer was overruled he filed a lengthy answer. In substance this pleading denied in general terms all claims relied on by plaintiff as grounds for relief; specifically denied that defendant had acquired any property of any kind from his father during the existence of a confidential relationship or by the exercise of undue influence; charged that even if any such property had been so acquired any right on the part of plaintiff to recover it, or its value, was barred by the statute of limitations and by laches; and prayed that all relief sought in the petition be denied.

With issues joined as heretofore related the cause came on for trial and was tried by the court. At the close of plaintiff's evidence defendant demurred thereto on the ground such evidence failed to establish a cause of action. When this demurrer was overruled defendant adduced his evidence. Thereupon the trial court took the case under advisement and announced the parties would be permitted to file requested findings of fact and conclusions of law.

Subsequently, after consideration of requests made with respect to such matters, the court made and filed its own findings of fact and conclusions of law and then rendered judgment against the defendant in accord therewith.

The findings of fact and conclusions of law on which the judgment is based are so extensive and in such form that they can be used to serve the dual purpose of giving a bird's-eye view of the complicated factual picture disclosed by a long and tedious record as well as the trial court's version of the essential facts established by the evidence and for that reason should be quoted at length. Except for finding of fact No. 16, which in part will be summarized, they read:

### "FINDINGS OF FACT

"1. Fred Johnson was born in Sweden and came to the United States at the age of 12. He died at McPherson, Kansas, on August 21, 1952, at the age of 81.

"2. Fred Johnson was married and his wife pre-deceased him. There was born to his marriage seven children as follows:

Irene Johnson
Leslie M. Johnson
Mildred L. Banforth
W. Lewis Johnson
Earl E. Johnson
Ellen Mae Hilgenfeld
Lowell Johnson

"Lowell Johnson is the youngest child and is now 37 years old. In 1925 Fred Johnson and his wife took into their home Mrs. Johnson's orphaned two twin nieces, Lila Conner and Lola Conner, who were then six weeks of age, and they lived with Mr. and Mrs. Fred Johnson until the death of Fred Johnson.

"3. Fred Johnson was a farmer and he owned a large, well improved farm southeast of McPherson, Kansas. In 1941 Lowell Johnson moved into the Fred Johnson farm home on the Southwest Quarter of Section 35, Township 19, Range 3, McPherson County, Kansas, and has resided there ever since. In 1941 Fred Johnson owned said quarter section and also the Northwest Quarter of Section 2, Township 20, Range 3, McPherson County, Kansas, as well as other land. Fred Johnson lived with Lowell Johnson in said farm home from 1941 until 1949 and they farmed together, owned livestock in partnership, and generally conducted their business together.

"4. Fred Johnson moved to McPherson, Kansas, in 1949 and lived with his two nieces and his daughter, Irene Johnson, until the time of his death. Mrs. Fred Johnson was then an invalid and died the following year. Until the time of his death, Fred Johnson kept a room at the home of Lowell Johnson.

"5. After Fred Johnson moved to the city of McPherson he continued to work with Lowell Johnson on the farm and either Lowell Johnson or Mrs.

Lowell Johnson came after Fred Johnson daily during busy seasons to take him to the farm to help with the farm work.

"6. During the latter years of his life, Fred Johnson had Lowell Johnson sign notes for him and also sign his checks for him from time to time.

"7. For a number of years Fred Johnson had Lowell Johnson keep his personal papers, abstracts of title, stock certificates, and other valuable papers for him in Lowell Johnson's safety deposit box in the McPherson & Citizens State Bank, and such papers were in Lowell Johnson's safety deposit box at the time of the death of Fred Johnson.

"8. During the latter years of his life, Fred Johnson was afflicted by ailments common to old age and was in the hospital at least one or more times every year for hospital treatment and care. His mental condition was about that of the average person of his age.

"9. During the last ten years of his life, Fred Johnson maintained a close relationship with Lowell Johnson and he placed his complete trust and confidence in him.

"10. On January 31, 1947, Fred Johnson conveyed to the defendant and his wife the Southwest Quarter of Section 35, Township 19, Range 3, McPherson County, Kansas, for the sum of $13,000.00. This quarter section was then reasonably worth $32,000.00 and the difference between the sale price of $13,000.00 and the $32,000.00 was a gift by Fred Johnson to the defendant and his wife. The parties orally agreed that Fred Johnson should retain the royalty oil runs from producing oil wells on the premises for the remainder of his life, although it was not mentioned in the deed. Lowell Johnson thereafter paid a part of such royalty oil runs to Fred Johnson from time to time.

"11. After said quarter section was transferred to Lowell Johnson and wife, Lowell Johnson paid off the mortgage of $8,569.82 owed by Fred Johnson by obtaining a new loan on the land and he further paid to Fred Johnson $975.18. The assumption and payment of said mortgage indebtedness and the cash payment of $975.18, the same being a total of $9,545.00, was all that was paid toward such purchase price of $13,000.00 by the defendant and his wife at that time.

"12. On July 14, 1948, Fred Johnson conveyed the Northwest Quarter of Section 2, Township 20, Range 3, McPherson County, Kansas, to the defendant for the sum of $17,500.00. This quarter section was then reasonably worth $30,000.00 to $32,000.00 and the difference between the sale price of $17,500.00 and the actual value of the land was a gift by Fred Johnson to the defendant. The parties orally agreed that Fred Johnson should retain the royalty oil runs from producing oil wells on the premises for the remainder of his life, although it was not mentioned in the deed. The royalty oil runs from these premises (the Northwest Quarter of Section 2, Township 20, Range 3, McPherson County, Kansas), were then paid by the oil companies direct to Fred Johnson until July, 1951.

"13. The $17,500.00 agreed purchase price was not paid at the time of the conveyance and the defendant and his wife gave a note to Fred Johnson for the $17,500.00 which was payable in ten years and was without interest, and a mortgage on the land to secure the payment of the note. A written agreement dated July 15, 1948, was given by the defendant and his wife to

Fred Johnson and his wife, which recited that the defendant would deliver to market for Fred Johnson the wheat produced from 40 average acres in lieu of paying any interest.

"14. The house in which Fred Johnson, his two nieces, and Irene Johnson were living in the city of McPherson was owned by Earl E. Johnson, a son of Fred Johnson. On May 5, 1951, Earl Johnson sent a registered letter to Fred Johnson stating that he wanted to sell this house to Fred Johnson for $6,500.00 and that if Fred Johnson did not buy it he wanted possession of the house by June 15, 1951. Fred Johnson then asked Lowell Johnson for money to buy the house. Lowell Johnson was unable to pay Fred Johnson that amount of money, except by making a new loan on the two quarter sections which he had purchased from Fred Johnson, but had not fully paid for. In order to obtain the new loan from the Federal Land Bank it was necessary that Fred Johnson release the $17,500.00 mortgage given him by Lowell Johnson.

"15. On June 11, 1951, Fred Johnson executed a release of said mortgage securing the note of $17,500.00 and also marked the promissory note for $17,500.00 as being paid in full. On June 13, 1951, the Federal Land Bank through the McPherson County National Farm Loan Association issued its check in the amount of $8,895.00, which was endorsed by George Lowell Johnson and cashed by Fred Johnson. The release of the note and mortgage by Fred Johnson was understood and intended by him to be for the purpose of Lowell Johnson obtaining a new and larger Federal Land Bank loan. Fred Johnson did not intend the release of the mortgage and the cancellation of the note as releasing Lowell Johnson from his obligation of paying the difference between the $8,895.60 and the $17,500.00. The gift of the difference between the $8,895.60 and the full amount of the note as alleged and claimed by Lowell Johnson would be unfair and unjust to Fred Johnson considering his then physical and financial condition. Fred Johnson was then in poor health and owed substantial amounts of money.

"16. After January 1, 1947, Lowell Johnson became indebted to Fred Johnson or his estate for the following items, to-wit:

| | |
|---|---:|
| Balance due on purchase price of SW¼ 35-19-3 | $3,455.00 |
| Royalty oil runs for 1947 | 406.48 |
| Royalty oil runs for 1948 | 796.34 |
| Purchase price of NW¼ 2-20-3 | 17,500.00 |
| Royalty oil runs for 1949 | 824.35 |
| Royalty oil runs for 1950 | 1,510.18 |
| Royalty oil runs for 1951 | 1,668.20 |
| Royalty oil runs for 1952 (Information not furnished by defendant—estimated 7/12ths of 1951 or | 973.00 |
| Money paid to Sears-Roebuck for harrow | 132.55 |
| Drill | 200.00 |
| Total indebtedness | $27,466.10 |

"Lowell Johnson made the following payment of money to Fred Johnson or in his behalf for which he is entitled to credit on such indebtednesses: (Here follows numerous payments found by the trial court to have been made by George Lowell Johnson to Fred Johnson on divers dates commencing January

31, 1947, up to and including February 4, 1952, the sum total of which was found to be $11,398.24.)

"The transactions and the amounts owed and paid as set forth in this paragraph are all a continuation of a related series of loans and payments between the father and son and these money transactions were intended to be connected and considered together. If the transactions were considered separately, justice requires that the monies paid by Lowell Johnson to Fred Johnson from time to time be applied on the oldest obligation of Lowell Johnson to Fred Johnson and the bar of the statute of limitations be tolled as to all items.

"17. Pursuant to the agreement mentioned in Finding No. 13 and as later modified Lowell Johnson has made delivery to market for Fred Johnson the wheat produced from 40 acres for all years, except the crop year of 1952. The plaintiff accepts the correctness of such amount.

"18. From and after January 1, 1947, and until the time of the death of Fred Johnson, the defendant, Lowell Johnson, occupied a confidential relationship toward Fred Johnson. Fred Johnson had no independent advice with reference to the gift claimed by Lowell Johnson of the difference between the $8,895.60 paid and the $17,500.00 owed. Such a gift would have been the result of undue influence on the part of Lowell Johnson.

"19. Pursuant to Supreme Court Rule No. 52 and at the request of counsel for the plaintiff, the Court hereby certifies that in deciding this matter it did apply the presumption of law with respect to parties occupying confidential relationship and did require the defendant to sustain the burden of proof on the issues with reference to the gift claimed by the defendant of the balance due on the $17,500.00 indebtedness."

### "CONCLUSIONS OF LAW.

"1. Plaintiff is entitled to judgment against the defendant for wheat harvested in the crop year 1952 in the agreed amount of $1,322.55.

"2. Plaintiff is entitled to further judgment against the defendant for the sum of $16,067.86 in settlement of the transactions between Fred Johnson and Lowell Johnson.

"It Is THEREFORE CONSIDERED, ORDERED, ADJUDGED AND DECREED that on this 3rd day of October, 1953, the plaintiff have and recover judgment against the defendant for the sum of $17,390.41 with interest thereon at the rate of 6% per annum from this day until paid and for costs of this action."

Following the rendition of the judgment defendant filed a motion to set aside the findings of fact, a motion for additional findings of fact, and a motion for new trial. Upon presentation of these motions the court announced that its finding of fact No. 13 should be corrected by substituting the words "at the combine or threshing machine," in lieu of the words "to market" heretofore underlined for purposes of emphasis, as they now appear in the quoted portion of such finding. Having made this correction it overruled each and all of such motions. Thereupon defendant perfected the instant

appeal wherein he now specifies forty separate and distinct errors as grounds for reversal of the judgment.

The first four of the numerous specifications of error assigned and argued by appellant relate to pre-trial errors. They are that the trial court erred (1) in overruling his motion to separately state and number the various causes of action, assumed by him to have been legal causes of action intermingled and confused in that pleading contrary to the statutory rules on pleading; (2) in denying his motions to strike certain allegations of the petition and make others more definite and certain; (3) in overruling his demurrer to such pleading based on the ground several causes of action were improperly joined; (4) in refusing him the right to a jury trial for the reason the nature of the action was legal rather than equitable.

Other sound grounds for rejecting the four foregoing claims of error appear and could be noted but the over-all reason, and therefore the only one required, is that each of such claims is fundamentally premised upon the erroneous concept that the nature of the action on which appellee bases his right to relief is legal rather than equitable in nature. We are not called upon, particularly in view of our statute (G. S. 1949, 60-201) providing the distinction between actions at law and suits in equity and the forms of all such actions and suits previously existing are abolished, to delve into intricacies of the age old arguments advanced respecting the distinctive characteristics of legal and equitable actions. Indeed, without doing so we have no difficulty in concluding that in this jurisdiction a suit by an executor, in which he seeks by discovery and an accounting to reach out and bring back into the estate of a deceased parent assets alleged to have been obtained by one of his children during the existence of a confidential relationship and by means of undue influence, sounds in equity and is to be so regarded and considered for trial purposes. The primary purpose, in fact the very essence, of such an action is to establish that the child so obtaining such property does so under conditions and circumstances giving rise to a trust by implication of law and the fact —as here—the general situation is such the executor may feel called upon to ask for the restoration and/or recovery of money does not change the nature of the action or afford grounds for a sound claim the defendant therein is entitled to a jury trial. (See, e. g., *Kuhn v. Johnson*, 91 Kan. 188, 137 Pac. 990; *Brush v. Boyer*, 104 Kan. 168, 178 Pac. 445; *Sipe v. Taylor*, 133 Kan. 449, 300 Pac. 1076.)

In the interest of whatever brevity can be attained under the confronting facts and circumstances we now turn, out of the order in which they are listed, to specifications of error relating to the overruling of the motion for new trial. Specification No. 10 (A), subdivided into fifteen specific complaints and relating to as many different bits of testimony, is that the trial court erred in admitting incompetent evidence offered by appellee. Obviously, it is impractical and would serve no useful purpose to prolong this opinion by detailing the evidence complained of. It may be said, however, that as to the major portion thereof the abstract fails to disclose any motion to strike was made and overruled. In such a situation, under all our decisions, since the trial was by the court, even if it be assumed the objections were otherwise good, there is no presumption such testimony if improperly admitted was considered or entered into the final decision of the case. (See *In re Estate of Walker*, 160 Kan. 461, 163 P. 2d 359; *In re Estate of Wittman*, 161 Kan. 398, 402, 168 P. 2d 541; *Bradbury v. Wise*, 167 Kan. 737, 748, 208 P. 2d 209; *Harrington v. Propulsion Engine Corp.*, 172 Kan. 574, 582, 241 P. 2d 733; *Spencer v. Supernois*, 176 Kan. 135, 268 P. 2d 946, [decided April 10, 1954].) Moreover, it must be kept in mind admission of incompetent evidence, irrespective whether it was considered, does not constitute reversible error if there is other competent evidence sufficient to sustain the judgment. (*The State v. Harper*, 84 Kan. 446, 113 Pac. 1058; *In re Estate of Wittman*, 402, *supra.*) After a careful examination of the entire record we are convinced that any evidence improperly admitted and thereafter subjected to a motion to strike was cumulative in character and hence does not warrant a disturbance of the ruling on the motion for new trial.

Specification of error No. 10 (B) contains ten separate and distinct complaints, most of them based upon the premise the trial court erred in excluding the testimony of a number of appellant's witnesses respecting their conclusions as to the influence exercised by him over his father during the time in question. Our examination of the record discloses that most of this testimony was properly excluded upon the objections made thereto. However, there is no occasion to labor the merits of these claims. It has not been made to appear that any of the evidence excluded, all of which we pause to note is oral, was produced at the hearing of the motion for new trial by affidavit, deposition or oral testimony in the manner con-

templated by our statute (G. S. 1949, 60-3004). The result under our decisions (See *In re Estate of Stewart,* 171 Kan. 93, 229 P. 2d 771; *Babb v. City of Wichita,* 172 Kan. 416, 241 P. 2d 755; *Handley v. Handley,* 172 Kan. 659, 668, 243 P. 2d 204; *Gillen v. Stangle,* 175 Kan. 364, 264 P. 2d 1079) is that none of the rulings respecting the rejection of such evidence are subject to appellate review. The rule, it may be added, is the same in criminal actions. (*State v. Beam,* 175 Kan. 814, 267 P. 2d 509.)

Upon application of the universal principle (See *In re Estate of Hayden,* 174 Kan. 140, 254 P. 2d 813; *Briggs v. Burk,* 174 Kan. 440, 442, 257 P. 2d 164) that in ruling on a demurrer to evidence courts must accept all evidence as true, give it the benefit of all inference that may be drawn therefrom and consider only such portions thereof as are favorable to the party adducing it, appellant's claim the trial court erred in overruling his demurrer to the evidence, because there was no evidence whatsoever to establish the existence of a fiduciary relationship between him and his father or the exercise of undue influence upon his part in obtaining the gifts set forth in the trial court's findings, has no merit and requires little, if any, discussion. Briefly stated, there was testimony showing they had been conducting business operations together, that Fred had been living with his son, that he had made gifts of both money and real estate to the latter, sometimes without being adequately compensated therefor and other times without payment of any consideration whatsoever. On top of all that, and other testimony indicating appellant's dealings with Fred were not what one would ordinarily expect from a son who had the trust and confidence of an aged father, one of Fred's brothers testified that appellant had not only admitted but boasted to him that he had full and complete control and domination over his father for the two years preceding his death. In the face of such a record it is asking too much of this court to hold there was no evidence to sustain the trial court's ruling on the demurrer to the evidence.

It would be of little benefit to the bench and bar to extend this opinion by a prolonged discussion of arguments advanced by appellant of divers assignments of error to the effect the trial court erred (1) in making findings of fact and conclusions of law which were not supported by competent evidence; (2) in entering judgment based upon erroneous findings of fact and conclusions of law; and (3) in entering judgment contrary to the law and evidence

applicable to the cause. Nor would it add anything to our reports to detail the evidence on which a decision of these questions must necessarily depend. It suffices to say that after a careful and painstaking review of all the testimony we have little difficulty in concluding and are convinced the record discloses ample competent testimony which, if believed, sustains each and all of the trial court's findings of fact, as heretofore set forth and quoted at length. The result, under the rule established by this court in a long and unbroken line of decisions, is that such findings are conclusive and will not be disturbed on appellate review even though, as appellant points out, the record discloses some evidence which might have warranted the trial court in making findings to the contrary. For some of our more recent decisions where this rule is discussed, applied and adhered to see *Bradbury v. Wise,* 167 Kan. 737, 208 P. 2d 209; *Shotzman v. Ward,* 172 Kan. 272, 279, 239 P. 2d 935; *In re Estate of Johannes,* 173 Kan. 298, 245 P. 2d 979; *In re Estate of Jones,* 174 Kan. 506, 514, 257 P. 2d 116; *In re Estate of Davis,* 175 Kan. 107, 110, 259 P. 2d 211. Numerous decisions of like import will be found upon reference to West's Kansas Digest, Appeal & Error, §§ 1010 (1), 1011 (1); Hatcher's Kansas Digest [Rev. Ed.], Appeal & Error, §§ 507, 508.

Based on what has been heretofore stated it becomes obvious claims advanced by the appellant, to the effect the trial court erred (1) in refusing to adopt his requested findings of fact and conclusions of law; (2) in overruling his motion to set aside many of the findings made by the trial court; and (3) in denying his motion for additional findings of fact, afford no sound basis for reversal of the judgment and need not be labored.

Additional grounds relied on for reversal of the judgment are that the appellee's claim was barred by the statute of limitations and laches. Under the confronting facts and circumstances we do not think the statute of limitations commenced to run until the appellant fiduciary definitely repudiated the obligations incurred by him by virtue of the fiduciary relationship existing between him and his father. The record fails to disclose action of that character on the part of the appellant during the life of his father. This action was commenced within six months after the latter's death. In that situation it cannot be successfully contended such action was barred by the statute of limitations. Nor are we disposed to hold that this

action, where it is conceded the rights of third parties have not intervened, has been barred by laches.

Other assignments of error to the effect the trial court's judgment was erroneous because appellee was allowed to recover more than the amount claimed in the prayer of the petition cannot be upheld. In the first place this was an action for a discovery, disclosure and accounting of all money and property claimed to have been received by appellant as a fiduciary wherein he answered and joined issue on all material questions raised by the petition. In the next resort to the prayer of the petition reveals that appellee asked for recovery of all money found to be due as a result of the accounting and that the recovery of the amount therein specifically named, which it must be conceded was less than that allowed by the judgment, was requested only in the event the appellant neglected or refused to appear in the action and make the accounting and disclosure prayed for in the petition.

Finally appellant asserts the trial court erred in applying the presumption set forth in finding of fact No. 19, heretofore quoted. We do not agree. This court has long been committed to the rule that persons enjoying a confidential relationship with the grantor of gifts *inter vivos* have the burden of showing that such gifts were made without undue influence (See *Henks v. Panning,* 175 Kan. 424, 264 P. 2d 483, and numerous decisions cited in its opinion).

Finding nothing in the record or in the errors assigned which either requires, warrants or permits a reversal of the judgment it must be and is affirmed.

It is so ordered.