No. 46,112

MAX GRUBB, Special Administrator of the Estate of Leslie C. Grubb, Deceased, *Appellee,* v. EXIE GRUBB, GRETCHA MARCH and JOE MARCH, *Appellants.*

(493 P. 2d 189)

Opinion filed January 22, 1972.

*Max Logan,* of the firm of Payne & Jones, Chartered, of Olathe, argued the cause and was on the brief for the appellant.

*Frank W. Hursh,* of the firm of Keach, Howard & Hursh, of Mission, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

FONTRON, J.: Leslie C. Grubb and Exie Grubb were husband and wife. For convenience we shall frequently refer to them as Leslie and Exie, respectively. Leslie departed this life September 20, 1967, and his son, Max Grubb, was appointed special administrator of his estate. In this capacity Max filed this lawsuit against Exie and her daughter and son-in-law, Gretcha and Joe March, to recover certain funds claimed to be assets of the estate. It may be said generally that the action is premised on the theory of an implied or constructive trust. Judgment was rendered in favor of the plaintiff administrator, adjudging the estate to be entitled to a one-half interest in funds totaling $75,000. The defendants have appealed.

The action was tried by the court on depositions. Perusing them we learn that Leslie's earnings, in the form of salary and bonuses, were quite substantial over the years and that Exie deposited sizeable portions thereof in savings accounts and certificates of deposit, some of which at least were originally in the names of Leslie and herself, as joint tenants. At the time of Leslie's death some of the accounts remained in their joint names, but the majority were titled in the names of Exie and Gretcha, and Exie and Joe.

The Grubb household, it has been made to appear, was not always a haven of harmony. In 1956, Leslie filed an action for divorce, which apparently died a natural death. Discord and contention expanded toward the end of their marriage, extending to physical altercations as well as verbal abuse, and Leslie started a second action for divorce on April 5, 1967. Before that lawsuit was tried Leslie passed away, but not before he and Exie had both been deposed. Additional facts will be developed when and as required.

The first point on appeal relates to the admissibility of the depositions of Leslie and Exie taken during the divorce proceedings but never filed in that case. Neither deposition was signed as required

by K. S. A. (now 1971 Supp.) 60-230 *(e)* and the defendants contend both were inadmissible for that reason. So far as pertinent, the statute reads:

"When the testimony [of the deponent] is fully transcribed the deposition shall be submitted to the witness for examination and shall be read to or by him, unless such examination and reading are waived by the witness and by the parties. Any changes in form or substance which the witness desires to make shall be entered upon the deposition by the officer with a statement of the reasons given by the witness for making them. The deposition shall then be signed by the witness, unless the parties by stipulation waive the signing *or the witness is ill* or cannot be found or refuses to sign. . . ." (Emphasis supplied.)

Both Mr. and Mrs. Grubb were deposed on July 12, 1967. The subscribing officer, a certified shorthand reporter of this state, certified that the original copy of Leslie's deposition was forwarded to his counsel on September 6, 1967; that he was informed Leslie was ill at the time and unable to read or sign the same and that he died on September 20. The facts recited in the certificate are not refuted or challenged. In our opinion, this situation comes fairly within the exceptions set out in the statute.

In *Ballhorst v. Hahner-Foreman-Cale, Inc.*, 207 Kan. 89, 484 P. 2d 38, a similar situation was presented. The witness whose deposition was taken in that case died the following day. We concluded that no error was committed in admitting the deposition, and we called attention to K. S. A. 60-226 *(d)* (3) which provides in part that the deposition of a witness who has died may be used by any party. Also in point is *Paul v. American Surety Company of New York*, 18 F. R. D. 68, in which the federal court held that where a witness was ill at the time he was deposed and remained ill continuously thereafter until the date of his death, his deposition could be used despite the fact it had not been signed.

The defendants further object to Leslie's deposition on the ground it is hearsay and does not fall within the exception to the hearsay rule noted in K. S. A. 60-460 *(c)* (2). The statute provides in substance that if the judge finds the declarant is unavailable as a witness, testimony given by him in a deposition taken in compliance with law for use in the trial of another action is admissible when the issue is such that the adverse party on the former occasion had the right and opportunity to cross-examine and had an interest and motive similar to that which the adverse party has in the action where the testimony is offered.

In our opinion the defendant's objection lacks merit. The record shows not only that Leslie was cross-examined during the taking of his deposition but that the ownership of bank deposits and accounts was an important issue in the divorce proceedings. That same issue forms the fabric of the instant litigation.

The admissibility of Exie's deposition taken July 12, 1967, which was also unsigned, is less clear. The deposition was forwarded to her then attorney but, according to Exie's testimony given in a second deposition dated February 2, 1969, she was never given a chance to see or read it, even though she said she had gone to the lawyer's office for that purpose. We believe it unnecessary, however, to determine whether Exie's unsigned deposition was or was not admissible, inasmuch as its contents regarding the various bank accounts were essentially the same as the statements contained in her subsequent deposition. Moreover, much the same ground is covered in other depositions mentioned hereafter.

In other words, the testimony given by Mrs. Grubb in her first deposition was merely cumulative to other evidence which was admitted, particularly that found in her own later testimony. Consequently, no prejudice can be said to result from the admission of her first deposition. This court has said that where a judgment is sustained by substantial competent evidence, the same will not be reversed simply because some incompetent evidence may have been interjected into the case. (*State v. Nelson,* 196 Kan. 592, 596, 597, 412 P. 2d 1018; *In re Estate of Johnson,* 176 Kan. 339, 270 P. 2d 293; *Kimball v. Edwards,* 91 Kan. 298, 302, 137 Pac. 948.) We believe this rule is peculiarly appropriate where a witness repeats, in a second deposition, that which he said in a prior deposition claimed to be inadmissible.

Other grounds have been assigned by Mrs. Grubb for excluding her deposition given in the divorce case. However, in view of what has already been said, no point would be served in further belaboring the matter.

We arrive at the defendant's second assignment of error which challenges Exie's second deposition as well as depositions given by four bank officials. In the first place it is said no foundation for their admission was ever laid as required by K. S. A. 60-226 (*d*) (3), which reads, so far as here seems germane, as follows:

"The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: . . . (II) that the witness

is outside of the county of the place of trial or hearing, unless it appears that the absence of the witness was procured by the party offering the deposition . . ."

. First, so far as Exie's deposition is concerned, this section of the statute is not applicable inasmuch as K. S. A. 60-226 (*d*) (2) provides that the deposition of a *party* may be used by the adverse party for any purpose, without regard to the limitations of subparagraph (3) cited above. Second, the depositions of two of the four bank officials show on their faces that the deponents reside in the state of Missouri and were thus admissible.

The two remaining depositions disclose their authors to be residents of Johnson County, where this action was tried. However, we do not view their admission as being fatal to the plaintiff's cause. Both relate to bank records which show savings accounts and certificates, most of which were titled in the joint names of Exie and either Gretcha or Joe. In this respect the testimony of these two deponents closely parallels that given by Mrs. Grubb herself, both with respect to the number and size of the accounts, and the manner in which they were titled. Hence, no prejudice is seen in their admission, even though the requisite foundation may not have been laid.

An additional objection is urged, apparently leveled against all depositions admitted, predicated on the ground that the trial procedures adopted by the court deprived the defendants of interposing question and answer objections. On this point the record reflects that at a hearing held September 3, 1969, the trial court indicated it would review the depositions to see whether they were admissible. Defense counsel thereupon stated he would want to object to some portions, although he made no attempt to pinpoint the parts to which he referred or the basis of his objections. In response to this panoramic objection, the trial court observed it would use only the relevant and material portions of the depositions.

Here the matter rested without further action until December 22, 1969, when all parties again convened, apparently to learn of the court's decision. At this juncture the court announced it was going to overrule all objections to the depositions. No further objections were raised to any deposition at this time, nor were prior objections made more definite.

We are left in the dark both as to the nature of the defendants' objections and as to what parts of the depositions they were leveled

against. Without such information we are in no position to judge whether the objections had been waived (see K. S. A. 60-232 [c]) or whether prejudicial error resulted from their having been over-ruled. Where error does not result in prejudice, reversal of a judgment is not required. (*State v. Sharp*, 202 Kan. 644, 451 P. 2d 137.) The burden of establishing prejudice rests, as we have often said, upon the complaining party. (See cases in 1 Hatcher's Kansas Digest [Rev. Ed.] Appeal & Error, § 408.)

A further procedural error is said to consist in the fact that the deponents were not listed by plaintiff as potential witnesses. There is no merit in this contention. The court entered no order requiring the parties to exchange names and addresses of their witnesses. Hence the rule prevailing in the 10th judicial district empowering the court to make such an order was in nowise violated.

We pass from procedural aspects to substance. It seems clear from colloquies occurring during pretrial hearings that plaintiff relied on the theory that Exie occupied a fiduciary relationship in handling and investing the family funds arising from Leslie's employment; that she breached that fiduciary relationship by depositing or investing a major share of those funds in savings accounts and certificates of deposit in the joint names of herself and either her daughter, Gretcha March, or her son-in-law, Joe March, thereby placing the funds beyond the reach of Leslie, the breadwinner; and that by so doing she became, in the eyes of the law, a constructive trustee of the funds so deposited.

The record makes clear that the trial court thoroughly under-stood the theory on which plaintiff was proceeding, and while it made no express finding of a constructive trust, the rationale underlying its decision appears to be that as to the funds placed jointly in the names of Exie and Gretcha and Exie and Joe, a one-half interest therein was being held for Leslie in trust. We believe the evidence of record is sufficient to support the theory of con-structive trust.

From the evidence, it appears that Mr. and Mrs. Grubb em-barked on their marital journey with only a few hundred dollars between them and that, with relatively minor exceptions, their accumulations had their inception in Leslie's salary, his bonuses and his commissions; that Leslie's entire earnings, except $400 per month retained for his personal and business expenses, were turned over to his wife to pay for her household and personal

expenses, to pay the couple's income and other taxes, and to invest the balance. In his deposition Leslie testified he had implicit confidence in Exie; that he took her word as to where their bank accounts were and made no attempt to verify the same; that he had no idea how Exie had shuffled accounts around or when he had learned that she was shuffling them, but that he had learned of this by accident; that Exie was secretive, and Leslie had no access to the safety deposit box. There was evidence to indicate that originally Exie deposited Leslie's earnings in their names as joint tenants but there is no doubt that when Leslie died, some $75,000 was reposing in bank and savings accounts and in certificates of deposit in which he had no ostensible title or interest.

While the form and variety of constructive trusts are numerous and may arise from many divergent circumstances (54 Am. Jur., Trusts, § 220, p. 170), we incline to the belief that the facts disclosed in this case fit within the generally accepted mold. A definition which appears to encompass the circumstances which here confront us is set forth in 89 C. J. S., Trusts, § 15, pp. 726, 727:

"While the term 'constructive trust' has been broadly defined as a trust raised by construction of law, or arising by operation of law, as distinguished from an express trust, in a more restricted sense and contradistinguished from a resulting trust it has been variously defined as a trust not created by any words, either expressly or impliedly evincing a direct intention to create a trust, but by the construction of equity in order to satisfy the demands of justice; one not arising by agreement or intention, but by operation of law; or one that arises when a person clothed with some fiduciary character, by fraud or otherwise, gains some advantage to himself."

The doctrine of constructive trusts is no stranger to this court. It has long found acceptance in the law of this state. (*Gemmel v. Fletcher*, 76 Kan. 577, 92 Pac. 713; *Meador v. Manlove*, 97 Kan. 706, 156 Pac. 731; *Witmer v. Estate of Brosius*, 184 Kan. 273, 336 P. 2d 455.) Contrary to the defendants' position, judicial recognition has also been accorded to the confidential nature of the marital relationship. In *Gemmel* we characterized the relation of husband and wife as being confidential in the highest degree known to the law.

Both sides direct our attention to *Clester v. Clester*, 90 Kan. 638, 135 Pac. 996, where we said that trusts by implication frequently arise in transactions between persons occupying such intimate relationship as husband and wife or parent and child, but we added that the mere fact that a transaction is between husband and

wife is not sufficient in itself to raise a trust by implication. In that case the trial court held the evidence was insufficient to establish a constructive trust. In an opinion which upheld that ruling this court said that under the attending circumstances the conveyance of the farm in question was presumed to be a gift to the grantor's wife. We observe nothing in the facts shown in the record before us to compel any such presumption in this case. If Mr. Grubb had survived his wife and upon her death had discovered that the fruits of his many years' labor had been placed beyond his reach by her manipulations after he had entrusted to her his substance, would it be claimed that equity was powerless to correct the wrong? We believe to ask the question is to answer it.

It cannot in truth be said that this case is entirely free of flaws and irregularities but we find nothing of sufficient gravity to warrant reversal. We are enjoined by K. S. A. 60-2105 to disregard technical errors which do not affirmatively appear to have prejudiced the substantial rights of the complaining party, where it appears on the entire record that substantial justice has been done by the trial court's judgment.

In *Phillips v. Fisher,* 205 Kan. 559, 470 P. 2d 761, the court expressed its long-standing rule in this way:

"It always has been the rule that a presumption of validity attaches to a judgment of the district court until the contrary is shown. Error is never presumed, and when an appellant brings a case to this court the burden is upon him to make it affirmatively appear that the judgment below is erroneous and that his substantial rights have been prejudicially affected thereby. If he fails in sustaining such burden the judgment must be affirmed. . . ." (p. 560.)

We adhere to the principle phrased in the foregoing quotation and we affirm the judgment of the court below.

O'CONNOR and PRAGER, JJ., not participating.