In re Willie ALBERT, Jr., Debtor.

Yvonne Deloris ALBERT, Plaintiff,

v.

Willie ALBERT, Jr., Defendant.

Bankruptcy No. 94–11070.
Adv. No. 94–5222.
Civil No. 95–1461–JTM.

United States District Court,
D. Kansas.

April 9, 1996.

---

Charles F. Harris, of Kaplan, McMillan and Harris, Wichita, KS, for plaintiff.

Michael D. Herd, of Curfman, Harris, Rose, Weltz, Metzger & Smith, Wichita, KS, for defendant.

## MEMORANDUM AND ORDER

MARTEN, District Judge.

Plaintiff Yvonne Deloris Albert brought the present adversarial action against her former husband, debtor/defendant Willie Al-

bert, Jr., seeking to determine the dischargeability of a state court judgment in her favor. She had obtained this judgment, in the principal amount of $23,810.80 with accrued interest of $6,276.77 as of April 1, 1994, for her former husband's failure to make contributions from his Air Force retirement benefits, as required under the division of property entered as a part of their July 31, 1994 divorce decree. She contends here that the obligation reflected in this judgment is alternatively not dischargeable as support under 11 U.S.C. § 523(a)(5) or as the product of a willful conversion of her property within the meaning of 11 U.S.C. § 523(a)(6).

The bankruptcy court found that future payments of retirement benefits were not a part of the bankruptcy estate and not subject to discharge. The court held that Yvonne's entitlement to 40% of Willie's retirement benefits constitutes her own property, and is not a part of the bankruptcy estate. However, the court rejected Yvonne's arguments as to the obligations for past due payments as reflected in the state court judgment, holding there was an insufficient basis for imposing a constructive trust in favor of Yvonne, or for finding that her former husband's failure to make the payments was willful and malicious within the meaning of § 523(a)(6). Yvonne appeals from this decision.

■ In reviewing the findings of the bankruptcy court, this court may set aside findings of fact only if they are clearly erroneous. Conclusions of law, however, are subject to de novo review. *In re Blehm Land & Cattle Co.*, 859 F.2d 137 (10th Cir.1988); *In re Herd*, 840 F.2d 757, 759 (10th Cir.1988).

Yvonne and Willie Albert were married from 1963 until their divorce in 1984. The Sedgwick County, Kansas District Court which granted the divorce also awarded Yvonne Albert 40% of Willie Albert's United States Air Force retirement pay, pursuant to 10 U.S.C. § 1408, as part of the "property division" between the parties.

A month after the entry of the divorce decree, the Kansas Court of Appeals concluded in *Grant v. Grant*, 9 Kan.App.2d 671, 685 P.2d 327 (1984), that military retirement pay lacks a present value allowing it to form a part of a division of property. Neither

Yvonne nor Willie Albert appealed or filed postjudgment motions to modify any aspect of the divorce decree in the wake of *Grant*. That decision was subsequently overturned by the state legislature in 1987. K.S.A. 23–201(b). Willie Albert continued to receive retirement benefits for the next 10 years, from July 31, 1984 until March 1, 1994. He did not advance any portion of these benefits payments to his former wife.

In early 1994, Yvonne Albert filed a motion to revive dormant judgments in the divorce action. This motion was granted, resulting in the judgment which forms the subject of the present action. On March 1, 1994, she contacted the United States Air Force Accounting and Finance Center, which implemented a 40% division of Willie Albert's disposable retirement pay under 10 U.S.C. § 1408. Willie Albert filed for relief under Chapter 7 of the Bankruptcy Act on May 2, 1994. Yvonne Albert filed her complaint to determine dischargeability on August 2, 1994.

In the present appeal, Yvonne does not seek review of the bankruptcy court's determination that the debt is dischargeable as a division of property rather than a support award. Instead, she contends that the bankruptcy court erred in failing to impose a constructive trust on the converted funds and in failing to find that the state court judgment is not dischargeable under 11 U.S.C. § 523(a)(6) as a willfully and maliciously incurred debt.

### 1. *Constructive Trust*

■ Yvonne contends that the bankruptcy court erred in refusing to impose a constructive trust in her favor as to military retirement proceeds which she contends should have been paid to her between 1984 and 1994. Her brief, however, introduces no argument or authority not presented to the bankruptcy court and none which was not properly rejected there.

Most of the decisions addressing a party's right to the retirement benefits of a former spouse who seeks the protection of the Bankruptcy Act focus, as did the bankruptcy court here, on amounts due under a division of

retirement benefits in the future. These decisions generally conclude that the amounts are not due and payable to the former spouse until the debtor/retiree receives the payment check from the government, and thus the amounts are merely future expectations rather than mature obligations which can be discharged. *See In re Teichman,* 774 F.2d 1395, 1398 (9th Cir.1985). A few courts have focused on constructive trusts as they relate to amounts which were due under a divorce decree prior to the bankruptcy petition. Most of these courts address the issue from the perspective of the willful and malicious exemption to discharge under § 523(a)(6), but a few have approached the issue from the perspective of constructive trust.

The case most similar to that presented here is *In re Zrubek,* 149 B.R. 631, 636 (Bankr.D.Mont.1993). In *Zrubek,* the court noted that to impose a constructive trust, Montana statutory law required some wrongful act working an inequitable result. The court then found that even if a fiduciary relationship existed between the debtor/retiree and his former wife, no wrongful act had occurred justifying the imposition of a trust. "The pre-petition obligation due the Plaintiff," the court held, "arose by reason of nothing more than a breach of the divorce decree and such debt is now dischargeable under 727(a)." 149 B.R. at 636.

In contrast to *Zrubek,* one court has explicitly applied a constructive trust theory to government retirement benefits in favor of a former spouse. In *Bush v. Taylor,* 912 F.2d 989 (8th Cir.1990), the divorce decree granted the former wife, as her "sole and separate property," one half of the former husband's pension benefits. The husband received monthly payments from the government, and the husband was obliged "to pay over to his former wife, on a timely basis, her half of each check." 912 F.2d at 990. After the husband fell into arrears, the parties in 1982 entered into an agreed judgment of $16,-412.00, representing half the arrearages. The former wife agreed not to execute on the judgment, so long as the husband made stipulated payments (reduced in amount from what he previously paid) on the 15th of each month, for the remainder of his life. In 1987,

the husband stopped making the required payments and filed for bankruptcy protection, along with his current wife. The bankruptcy court discharged the debtors for all obligations arising prior to the filing of the bankruptcy petition, but refused to grant a discharge as to future required payments since these payments were subject to a constructive trust. This decision was affirmed by both the district court and by a divided Eighth Circuit sitting en banc. The court of appeals stated:

> As the courts below held, the facts of this case give rise to a trust relationship between Alvin Taylor and Bush. Her share of the pension was her sole and separate property and Alvin Taylor received it (via the monthly pension checks) as a constructive trustee for her benefit. We have no difficulty in affirming the judgment of the District Court on this ground.

912 F.2d at 993. In a footnote, the court also stated that the same theory of constructive trust

> would, in our view, apply equally to the arrearages between 1982 and 1987, despite the lower courts' conclusion to the contrary—that this pre-petition amount was dischargeable indebtedness. If Taylor was responsible for the payments as a constructive trustee he was a trustee before the Taylors filed their bankruptcy petition as well as after.

*Id.* at 993 n. 6. However, the court concluded that the issue was not properly before it, since the former wife had not cross-appealed on the issue of the 1982–87 obligations.

Four of the nine judges on the *Bush* panel dissented, finding that no fraud or overreaching was required for a constructive trust. Nor had there been a showing of any unjust enrichment "beyond what always occurs when any bankrupt is given a fresh start." *Id.,* at 994, 996 (Arnold, J., dissenting).

In *In re Sommerville,* 122 B.R. 446 (Bankr.M.D.Ala.1990), the court also imposed a constructive trust as to the debtor/ex-husband's obligation to pay 40% of military retirement benefits to his ex-wife. The decree there, however, was accompanied by a judgment which "expressly made debtor a trustee

of the 40 percent and he was ordered as trustee to pay over to the defendant that 40 percent within three days after receipt by mail in the form of a negotiable instrument." *Id.*

In both *Bush* and *Sommerville,* the debtor/spouse was under an explicit and affirmative obligation to make specified payments at specified times. In the present case, in contrast, the divorce decree apportions Willie Albert's retirement benefits on a percentage basis but is otherwise silent on the issue of how the benefits are to be paid or collected.

Whether a constructive trust may be imposed under these circumstances depends upon applicable state law. *In re Teichman,* 774 F.2d 1395, 1399 (9th Cir. 1985). In a bankruptcy case arising outside the military retiree situation, it has been held that a constructive trust arises under Kansas law where "a fiduciary unjustly benefits from its relationship." *In re Franklin Sav. Corp.,* 159 B.R. 9, 30 (Bankr.D.Kan.1993), *aff'd,* 182 B.R. 859 (D.Kan.1995). The Kansas Supreme Court has held that the existence of a marital relationship is insufficient by itself to create a trust relationship. *Grubb v. Grubb,* 208 Kan. 484, 490, 493 P.2d 189 (1972). A constructive trust may be imposed among family members where there are "special circumstances showing reliance upon the family member and some betrayal of a confidence reposed." *Matter of Topeka Motor Freight,* 553 F.2d 1227, 1231 (10th Cir.1977) (applying Kansas law).

The mere fact of a familial relationship, husband and wife or parent and child, is not enough to establish a constructive trust.

> There must be fraud, active or constructive, some betrayal of confidence reposed or some breach of duty imposed by such relation. Neither character of fraud will be presumed from the fact alone that the relationship of the parties is such as to suggest that a fiduciary relation may have existed.

*Clester v. Clester,* 90 Kan. 638 Syl. 1, 135 P. 996 (1913). Constructive fraud occurs when there is "a breach of a legal or equitable duty which, irrespective of the moral guilt, the law declares fraudulent because of its tendency to deceive others or violate a confidence and neither actual dishonesty of purpose or intent to deceive is necessary." *Loucks v. McCormick,* 198 Kan. 351, 356, 424 P.2d 555 (1967).

The most recent case addressing the issue of constructive trust in Kansas is *Rice v. Garrison,* 258 Kan. 142, 898 P.2d 631 (1995), in which the district court invalidated beneficiary provisions in the decedent husband's pension and insurance policies, and imposed a constructive trust in favor of the husband's second wife. The district court imposed the trust because of oral statements made by the decedent husband to his second wife that he had changed or was going to change the designated beneficiary under the policies from his first wife to her. The designated beneficiary was never changed.

The Kansas Supreme Court reversed the portion of the district court's opinion imposing the constructive trust, with the observation:

> A court of equity has broad but not unlimited powers to grant relief. Unlike Zorro or the Scarlet Pimpernel, a court under the guise of exercising its equitable powers may not right what it perceives as a wrong or unfairness absent an adequate equitable basis therefor.

*Id.* at 151, 898 P.2d 631.

In reaching this conclusion, the court distinguished the case of *Hile v. DeVries,* 17 Kan.App.2d 373, 836 P.2d 1219 (1992), which had been relied upon by the district court in imposing the constructive trust. In that case, according to the *Rice* court, a constructive trust had been imposed because the decedent had improperly changed insurance beneficiaries even though he was under "a legally binding property settlement agreement" to maintain his children as beneficiaries. *Id.* at 152, 898 P.2d 631. "The big issue in *Hile* was whether fraud had to be proven before a constructive trust could be imposed. It was undisputed that the deceased had changed the beneficiary on his insurance when he had no legal right to do so." *Id.* at 152, 898 P.2d 631. In contrast, the *Rice* court found in the case before it that the facts were not sufficient to "support the existence of a contract between Dale and Beverly whereby Dale had the obligation to

change his designation of beneficiary." *Id.*, at 154, 898 P.2d 631.

■ The law is clear that a marital relationship alone is not enough to create a constructive trust; the plaintiff seeking to impose the trust must have evidence of unconscionable conduct and reliance by another party. *In re Franklin Sav. Corp.*, 159 B.R. 9, 30 (Bankr.D.Kan.1993), *aff'd*, 182 B.R. 859 (D.Kan.1995); *In re Zrubek*, 149 B.R. 631 (Bankr.D.Mont.1993). Here, Yvonne has not introduced evidence of fraudulent acts by her former spouse or that he ignored, evaded, or circumvented an explicit order of the state court. In light of this failure, there is no basis under which the court could impose a constructive trust. The facts present here do not reveal that Willie Albert was subject to the sort of "legally binding" obligation which the *Rice* court identified as justifying the imposition of a constructive trust.

### 2. *Willful and Malicious Injury*

■ The bankruptcy court found the failure of Willie Albert to pay a portion of his retirement benefits prior to 1994 was not a willful and malicious action within the meaning of the bankruptcy code. The court stated:

> It is unclear what effect Debtor may have thought the *Grant* case had on Plaintiff's right to the retirement pay. In addition, the Divorce Decree does not expressly obligate Debtor to provide Plaintiff with her share. In fact, the Divorce Decree sets forth the address of the Air Force Accounting and Finance Center. It is unclear from the Divorce Decree who was obligated to initiate the direct payment of Plaintiff's share. In any event, Debtor in no way impaired or obstructed Plaintiff from pursuing her right to receive the retirement pay.

*In re Albert*, 187 B.R. 697, 701 (Bankr.D.Kan. 1995).

■ A willful or malicious injury occurs in the context of § 523(a)(6) when the debtor, without justification or excuse, and with knowledge that his acts will cause particularized injury, nonetheless acts and causes such injury. *In re Pasek*, 983 F.2d 1524 (10th Cir.1993). A creditor may establish dischargeability indirectly by proof that the debtor "had knowledge of the creditor's rights and that, with that knowledge, proceeded to take action in violation of those rights." *In re Posta*, 866 F.2d 364, 367 (10th Cir.1989).

The present issue is identical to that recently addressed by Judge Kelly in *In re Day*, Case No. 95–1317–PFK, 1996 WL 42071 (D.Kan. Jan. 29, 1996), where the court held that the actions of the debtor and former hospital patient, in cashing and spending the proceeds of a medical insurance check, were willful and malicious. The determination of nondischargeability in *Day* was premised on two factors. First, there was evidence that prior to converting the check, the debtor had been informed by the hospital that it was claiming the check as its property under an assignment agreement. Second, the court found that the justification or excuse offered by the debtor—that she believed the check could be used to pay her other medical bills—was not credible in light of her use of the largest share of the proceeds for nonmedical expenses.

The present case is different. Here, Yvonne Albert did not assert any active claim for her portion of the retirement benefits until 10 years after the initial state court order dividing the property. Moreover, the decree order does not contain an unambiguous directive to Willie Albert to pay any particular amount to Yvonne or to segregate certain funds into a separate account. The decree instead merely states the general basis upon which the benefits are to be apportioned: "as property division, forty percent (40%) of the respondent's disposable retired pay pursuant to 10 U.S.C. § 1408." (Plaintiff/appellant's Brief at 7.) Finally, shortly after the 1984 divorce decree, the Kansas Court of Appeals ruled that military retirement benefits do not have a present value allowing them to be the subject of a property division in a divorce settlement. *Grant v. Grant*, 9 Kan.App.2d 671, 685 P.2d 327 (1984). This decision was subsequently overturned, but there is no indication that Yvonne Albert took any action to then en-

force or protect her right to her portion of the retirement benefits.

In the present appeal, Yvonne relies in particular upon several decisions in which the failure to pay a portion of military retirement benefits to a former spouse has been held to be a willful and malicious action under § 523(a)(6). *In re Russell,* 141 B.R. 107 (Bankr.W.D.La.1992); *In re Mace,* 82 B.R. 864 (Bankr.S.D.Ohio 1987); and *In re Berman,* 125 B.R. 74 (Bankr.E.D.N.Y.1991). The court finds that these decisions are distinguishable on several levels.

In *Russell,* the state trial court initially denied any division of the defendant husband's retirement benefits in 1983. The former wife appealed that decision, which was eventually overturned and remanded with instructions to calculate the portion of the benefits owing to the wife. In a judgment dated May 13, 1991, the trial court granted the former wife "38.9% of all disposable retired pay … received or to be received by defendant after March 31, 1991."

The former husband advanced no credible excuse for failing to make the payment required by the state court—or, indeed, for continuing to refuse making payments even after the bankruptcy petition was filed. In concluding that the state court judgment was not dischargeable, the federal court concluded that "it seems clear Mr. Russell has little if any present intention whatsoever of paying any sum owed." 141 B.R. at 110. Moreover, it is apparent that the former spouse in *Russell* actively and consistently pursued her claim to her portion of the retirement benefits, ultimately obtaining a judgment against her former husband for a division of the retirement benefits.

In *In re Mace,* 82 B.R. 864 (Bankr. S.D.Ohio 1987), the court determined that the former husband's actions in failing to pay sums required by the judgment rendered in the divorce action were willful and malicious under the bankruptcy code. The divorce action judgment did not simply divide the military retirement benefits among the parties; it explicitly ordered the defendant husband "to remit to [his former wife] 30% of each pension check based on twenty years of service, when received by [him] from the United States government." *Id.* at 866.

In *In re Berman,* 125 B.R. 74 (Bankr. E.D.N.Y.1991), the former husband was found to have knowingly and willfully converted a large sum of money ($26,250.00) from the joint bank accounts and $5,000.00 from a safe deposit box held by himself and his former wife. He refused to turn over or account for these funds, and was found in contempt by the state court for refusing to follow the divorce court's orders directly requiring the former husband to make specified monthly payments for alimony, child support, and repayment of the converted property. The *Berman* court concluded that the debt was not dischargeable, noting the prior contempt citation and the finding that the husband's actions were willful and malicious, and that the husband had directly declined the court's invitation to offer "any additional facts or mitigating circumstances" relating to the conversion of funds. 125 B.R. at 77.

In the present case, in contrast to *Russell* and *Mace,* the initial 1984 court order merely divides the marital estate, without including a direct judgment against Willie Albert requiring him to pay a certain amount and to make payments at specified times. Instead, the order lists the address of the Air Force's accounting office, suggesting that the court left the matter of collection to Yvonne. Rather than actively pursuing her claim against her former husband, Yvonne took no action in support of her claim for 10 years. Additionally, unlike the former spouses in *Russell* and *Berman,* whose refusals to make payments required by state court judgments were clearly unjustified and without excuse, in the present action Willie Albert has a colorable argument that his failure to may payments to Yvonne was not malicious, owing both to the ambiguity in the 1984 decree order and in the decision in *Grant* rendered shortly after that order, which held that retirement benefits were not subject to partition.

The present matter was submitted to the bankruptcy court on stipulated orders, and there is nothing in those stipulated facts to demonstrate that Willie's failure to pay a

portion of his retirement benefits between 1984 and 1994, however wrong in a general sense, was willful and malicious within the meaning of the bankruptcy code. The court cannot find that the bankruptcy court's decision here was in error.

IT IS ACCORDINGLY ORDERED this 9th day of April, 1996, that the present appeal is hereby denied.